In the Interest of J.R.H. and M.J.H., Children,

W.R.S., Mother, Appellant,

R.H., Father, Appellant,

Oglala Sioux Tribe, Intervenor-Appellant.

No. 84–138.

Supreme Court of Iowa.

Nov. 14, 1984.

Michael J. Schilling, Burlington, for appellant mother.

Michael G. Dieterich, Burlington, for appellant father.

William J. Cahill, Burlington, and Russell D. Zephier, Pine Ridge, S.D., for intervenor-appellant Oglala Sioux Tribe.

Alan Waples, Burlington, guardian ad litem, for appellees J.R.H. and M.J.H.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Sp. Asst. Atty. Gen., and Eleanor E. Lynn, Asst. Atty. Gen., for Iowa Dept. of Human Services.

Considered by REYNOLDSON, C.J. and McCORMICK, LARSON, SCHULTZ and CARTER, JJ.

SCHULTZ, Justice.

These appeals arise from a child-in-need-of-assistance (CINA) proceeding in juvenile court pursuant to Iowa Code sections 232.-87–.103. The State instituted these proceedings on behalf of J.R.H. and his sister M.J.H. The father, R.H., a resident of Burlington, Iowa, and the mother, W.R.S., a resident of South Dakota, were given notice of the proceedings and took part in them. The father is white. The American Indian mother is a member of the Oglala Sioux Tribe which has intervened on her behalf and requested the proceedings be transferred to its tribal court. Early in the proceedings, the juvenile court placed temporary custody of the children with the Iowa Department of Human Services (Department) for foster home placement because of suspected child abuse. After an adjudication that the children were in need of assistance, the juvenile court in two dispositional orders continued their placement with the Department.

The mother appeals from the second dispositional order claiming the court should have placed custody with her. The tribe appeals, joining the mother's claim concerning the dispositional order, and further claiming that the juvenile court order denying the tribe jurisdiction over the children was in error. The father appeals challenging the adjudicatory and dispositional orders of the juvenile court.

The Department and the children who are represented by an appointed attorney do not appeal; however, they have expressed their positions in their briefs and arguments. The Department recommended placement of the children with the mother at the time of the dispositional hearing and adheres to that position on appeal. The attorney for the children urges that the juvenile court's dispositional order be affirmed.

The father and mother lived together for approximately seven years, but were never married. The parents traveled together throughout the country in furtherance of the father's singing career. The mother was married to another man until the marriage was dissolved sometime after the birth of J.R.H. in 1972. J.R.H. was born on the Pine River Reservation in South Dakota, and his parents left the reservation several weeks after his birth. M.J.H. was born in the University Hospital in Iowa City while the parents were residing in Camanche, Iowa, in 1976. Both children have been acknowledged by their father as his children. The children are eligible for enrollment in the Oglala Sioux Tribe as members.

The evidence reflects that the father has a long-standing drinking problem. The mother testified that she was subjected to physical abuse and that she left the home shortly after her daughter was born due to this abuse and the father's threats. She maintains that she unsuccessfully sought the aid of the local authorities to secure physical custody of the children. She returned to the reservation and sought the assistance of her grandfather, a chief of the tribe. She indicated that after performing a tribal rite, he told her the children would be returned to her.

Until these proceedings commenced, the mother had little or no contact with the children. From the time of the separation until the institution of these proceedings, the father has had the full responsibility for the children. He rarely worked, so he was able to devote his time to the children. The family has received Aid to Families With Dependent Children and has lived in low-rent housing.

In January 1982 the Des Moines County Attorney's Office filed a petition to have the children adjudicated children-in-need-of-assistance due to physical abuse and neglect. The children had been placed in emergency foster care on occasions due to their father's intoxication, including one instance when he arrived for a court proceeding intoxicated. There are numerous reports of physical abuse toward the boy. On April 27, the children were placed with

the Department on an emergency basis due to physical abuse to the boy which was committed the previous day.

The mother and the tribe were notified of the CINA proceedings. The mother renewed contact with her children at times when hearings were set in August and December of 1982.

On December 10, 1982, following an adjudicatory hearing, the juvenile court found the children were in need of assistance. The court cited the father's severe drinking problem and listed numerous incidents of neglect of both children and physical abuse of the boy. The petition does not allege that the children were in need of assistance due to any acts of the mother, and there were no findings to that effect pursuant to Iowa Code section 232.2(5). The court stated that the parties had agreed to a temporary disposition allowing the children to remain in the present foster home placement pending the dispositional hearing, which was then scheduled.

The dispositional hearing was set for January 11, 1982. The attorney for the children had been authorized by the court to travel to South Dakota to investigate the mother's situation in regard to custody of the children, and the court additionally authorized the father's attorney to conduct such an investigation at county expense. Home studies concerning the mother were prepared by the Department.

At the dispositional hearing in January 1983, all parties, except the father, recommended placement with the mother. On January 19, 1983, the court ordered that the children remain in the temporary legal custody of the Department with placement authorized in a foster home. The court further ordered that at the expiration of the second semester of school, the children were to be transported to South Dakota for temporary placement with the mother during the summer months under the supervision of the Department. A hearing for review and further disposition was set for August 5, 1983. The juvenile court found that the father continued to suffer from a drinking problem which detrimentally affects his treatment of the children and that it would be inappropriate to return the children into his custody. Upon considering placement with the mother, the court found that she "is unemployed, living on very limited public assistance, and further that her living arrangements, if the children were placed with her, are very uncertain and presently crowded, lacking in necessary facilities and inappropriate." At that time the mother was unemployed and lived on the reservation with members of her extended family.

At the time of the summer visitation with the mother, she moved off the reservation to Rapid City, South Dakota. She secured better housing and a job. The children were returned to Iowa and placed once again in foster care awaiting the outcome of the scheduled hearing.

The next hearing commenced, and evidence was presented on August 5 and 6. The matter was taken under advisement; however, the hearing was later reopened and further evidence was taken on October 20, 1983.

The father presented evidence that he had undergone treatment for his alcoholism and had made great strides in treatment. At the reopened hearing, however, evidence was admitted that the father had been arrested for public intoxication.

The mother provided evidence that she had moved to Rapid City, secured better housing and employment. She indicated that she had provided the children with recreational activities and the opportunity to meet their family and learn of their cultural background. A social worker for the Bureau of Indian Affairs in South Dakota and an Indian child welfare advocate for the Oglala Sioux Tribe visited the mother's home while the children were there and found the situation satisfactory. One incident occurred in which the boy was involved in some bicycle thefts with a neighbor boy. The witnesses indicated that the mother properly disciplined the boy.

The foster mother was called to testify by the father and gave a different slant on the summer's activities. She transported the children to South Dakota and testified that while the house was satisfactory, the area around it was like a Chicago ghetto. She further testified there were intoxicated men at the house behaving in what she felt was an inappropriate manner toward the mother. The foster mother reports that, after their return to Iowa, the children have talked about drinking and fighting which occurred during their visit. This testimony is suspect. The social worker concluded that the foster mother became emotionally involved with the children and lost her objectivity.

The State presented evidence through a social worker for the Department who testified and presented a report of her social investigation. The social worker concluded the father had not demonstrated sufficient progress to warrant the return of the children to his care. She indicated that the mother had provided the children's basic needs during the two months' visitation without any abuse or neglect; however, she thought that the mother would benefit from parenting assistance and would need to establish her own residence. The social worker further recommended that the court apply the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901–63 (1982), with special emphasis on the order of preference in placement; thus, the children should be placed in an Indian home with the first preference given to their mother, second preference to an appropriate home of one of their Indian relatives, and third preference to an Indian foster home.

The attorney for the children in his written recommendation following the first hearing, but prior to the reopened hearing, recommended that legal custody remain in the Department of Human Services with physical placement to be with the natural father during the school year and with the natural mother during the summer vaca-

tion, such placement to be supervised by the Department. The record does not indicate a subsequent recommendation following the reopening.

On December 9 the juvenile court entered its ruling. The juvenile court described its January order as a temporary placement and stated that it had set the dispositional hearing for August 5. It then rejected the mother's and father's claims and ordered custody granted to the Department for continued foster home placement pending a change in present conditions and pending further order of the court. Concluding that it could not grant the mother's request for permanent custody, the court invited the parties to litigate the issue of custody in a court of competent jurisdiction pursuant to the present Iowa Code section 232.3(2) (Supp.1983).[1]

The court found the children continued to be in need of assistance upon clear and convincing evidence that the father continues to suffer from an alcoholic condition which he is unable to control and from a tendency to overreact to perceived problems, described by the psychologist as impaired judgment and by the county attorney as a "paranoid tendency."

The court indicated it must determine an appropriate disposition pursuant to section 232.102 and that it considered placement with the mother pursuant to section 232.-102(1)(a) as "[a] relative or other suitable person." The court rejected placement with the mother on the basis that it would not be in the best interests of the children to have another temporary disposition. The court found the mother's living conditions did not substantially improve when she moved to Rapid City and went on to criticize her long work hours due to subsistence wages. The court noted that the children "during the visit were witnesses to alcohol abuse, some conducted by a child of age 10, overt sexual activity, fighting, and other criminal conduct which was certainly

---

**1.** Section 232.3(2) provides that the "juvenile court with jurisdiction of the pending action under this chapter, however, may, upon the request of a party to the action or on its own motion, authorize the party to litigate concurrently in another court a specific issue relating to the custody, guardianship, or placement of the child who is a subject of the action."

not conducive to good emotional or physical health." The court indicated that the mother's troubles in this regard seem to be of a continuing nature.

The juvenile court extensively discussed matters concerning the Tribe's intervention and the applicability of the ICWA. It overruled the father's objection to the intervention and the participation of the Tribe's counsel. Finally, it concluded the ICWA was inapplicable to this proceeding.

■■■ The parties appeal from the dispositional orders. In CINA proceedings we review the evidence de novo. *In re Black-ledge*, 304 N.W.2d 209, 210 (Iowa 1981). The legislature provided specific guidelines for interpreting chapter 232 by stating:

> This chapter shall be liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in his or her own home, the care, guidance and control that will best serve the child's welfare and the best interest of the state.

Iowa Code § 232.1 (1983). The welfare and best interests of the children are paramount. *In re Henderson*, 199 N.W.2d 111, 120 (Iowa 1972).

This appeal has raised a multitude of issues briefed by the various participants. We have considered all of the issues presented, but shall comment only on those points that we consider dispositive. We shall discuss the claims of the tribe, the mother and the father in that order.

*I. Transfer to tribal court.* The Oglala Sioux Tribe sought transfer of these proceedings to the Oglala Sioux Tribal Court. As authority for the transfer, the Tribe cites the ICWA which in pertinent part states:

> In any State court proceeding for the foster care placement of, ... an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the peti-tion of either parent ... or the Indian child's tribe....

25 U.S.C. § 1911(b) (1983).

On September 15, 1982, the juvenile court denied the Tribe's application for transfer of the proceedings, implicitly finding good cause to deny transfer. The Tribe now appeals this decision. We find this claim without merit; therefore, it is unnecessary to consider the claim that this appeal was untimely.

■■■ Good cause to deny transfer of the proceedings to the tribal court may arise from geographical obstacles. In determining good cause, we may consider the circumstances when the "evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship of the parties or the witnesses." Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,591 (1979).

■■ We conclude the juvenile court was correct in its determination that the proceedings should not be transferred. The Tribe's contact has been with the mother, not the family unit. The State of Iowa through its social agency has had extensive contact with the family unit. The bulk of the evidence and the majority of the witnesses will come from Iowa. The transfer would result in undue hardship to the parties and the witnesses. Good cause was shown to deny the transfer.

*II. Father's claim.* The father raises procedural, evidentiary and failure of proof issues. We hold that the juvenile court correctly refused his claim seeking the return of the children.

The father claims that the court erred in considering the hearing that commenced in August 1983 and culminated with a ruling on December 9 to be a disposition hearing and applying the statutes and burden of proof applicable to a disposition hearing, when it actually was a review hearing. We find it unnecessary to consider this issue because the father would not be successful in either event. The burden of proof for a

review hearing is stated in section 232.-102(6):

> The placement should be terminated and the child returned to his or her home if the court finds by a preponderance of the evidence that the child will not suffer harm in the manner specified in section 232.2, subsection 5 [which lists the bases for finding a child to be in need of assistance].

The juvenile court found in its December 1983 ruling as follows:

> The evidence establishes by clear and convincing evidence that [father] continues to suffer from an alcoholic condition which he is unable to control. The evidence also shows [father] suffers from a tendency to overreact to perceived problems described by the psychologist as impairment of judgment and which has been described by the county attorney as a "paranoid tendency." The children continue to be in need of assistance.

█ The evidence of the father's continued alcoholism alone is sufficient to support the court's determination that the children continue to be in need of assistance, even under the burden of proof for a review hearing. The numerous instances of child abuse and neglect are an outgrowth of the father's alcoholism. The court correctly refused to return the children to the father's care.

█ The father also asserts that the trial court erred when it reopened the case and took additional testimony after final submission in August, citing Iowa Rule of Civil Procedure 192. Rule 192 is inapplicable. Its placement is in that portion of the rules that are applicable to jury trials. By its very terms, it applies "any time before final submission," and this was a reopening after final submission.

█ In a trial to the court, the court has broad discretion to reopen the evidence; this court has said, "Such discretion is to be liberally exercised." *Dobler v. Bawden*, 238 Iowa 76, 85, 25 N.W.2d 866, 871 (1947). We find no abuse of discretion; the motion to reopen should have been granted. This is a juvenile case in which the best interests of the children dictate that the rules of procedure be liberally applied in order that all probative evidence might be admitted.

█ Finally, the father claims the juvenile court erred in overruling his objection to the presentation of evidence by telephone conference calls in the August 1983 hearing. All other parties agreed with the procedure. The witnesses testified from South Dakota concerning the mother's home situation and the two-month visit by the children. This testimony did not reflect on the father's ability or lack of ability to care for the children. In this instance the testimony could not have changed the outcome as far as the father was concerned. We conclude that error, if any, was harmless.

*III. Mother's claims.* On appeal, the mother has not challenged the adjudicatory order determining the children to be in need of assistance. Rather, she claims the juvenile court erred in its dispositional ruling by not placing custody of the children with her.

The mother primarily relies on the failure of the court to apply the provisions of the ICWA to the proceedings; however, she also urges that the court at no time concluded that she was an unfit parent and that her children would suffer emotional or physical damage if they were placed with her. She maintains that the court's criticism of her employment situation and her social and cultural environment is misplaced. She points to the court's finding in an earlier hearing that her unemployment and crowded residence were unacceptable and argues that she remedied this situation. Thus, the court did not have substantial evidence to support its comments concerning social and cultural deficiencies in her home.

With the exception of the father, all parties acknowledge the applicability of the ICWA to the dispositional proceedings. We determine the juvenile court erred when it applied the dispositional standards of a CINA proceeding. Consequently, we

find it unnecessary to address the ICWA issue as it applies to the present record.

Initially, we shall consider the Department's contention that disposition of any sort was premature. The Department correctly points out that the mother has never been adjudged an unfit custodian for the children. We cannot accept the Department's next assertion that such a finding is necessary in the adjudicatory stage to give the court jurisdiction to conduct a dispositional hearing. We believe such a finding was essential in this case during the dispositional stage if there was to be a transfer of legal custody of the children pursuant to section 232.102. However, since the juvenile court did not acknowledge the mother's right to legal custody and entered a disposition without any adjudication concerning her fitness, the juvenile court applied incorrect standards in its dispositional rulings.

Under the record of this case, we determine that both parents were entitled to legal custody of the children before the initiation of the CINA proceedings. The mother of a child born out of wedlock has the right to sole custody of the child unless paternity has been acknowledged by the father or the court has ordered otherwise. Iowa Code § 675.40 (1983). It is undisputed that the father has acknowledged paternity of the children and had physical custody of the children prior to the CINA proceedings. Sole legal custody in one parent has never been established nor has either parent's right to permanent legal custody been terminated. We held in *Heyer v. Peterson*, 307 N.W.2d 1 (Iowa 1981), that a mother, who had physical custody of the child, could not deprive an unwed father of his right to legal custody without proper notice. *Id.* at 6. We also ruled out gender-based discrimination in the selection of a custodial parent between unwed parents. *Id.* at 7. Applying our ruling in *Heyer* to the present case, both unwed parents share the right to legal custody of their children.

Our review of the dispositional orders convinces us that the juvenile court failed to consider the mother's right to legal custody. We agree that the juvenile court properly refused to adjudicate the mother's petition for permanent custody. The court correctly concluded that a CINA proceeding contains no provision for determination of permanent custody. When legal custody is transferred pursuant to section 232.102, only temporary placement of the child is authorized, and at the conclusion of the proceedings, the child should be returned home or proceedings to terminate the parent-child relationship should be instituted. Iowa Code § 232.103 (1983); *Blackledge*, 304 N.W.2d at 214. The lack of authority to make a permanent disposition does not affect the court's authority to make a temporary disposition, placing the child with a parent who has a right to legal custody. *See* § 232.101.

The only consideration that the juvenile court gave the mother was pursuant to section 232.102(1)(a) as a "relative or other suitable person." This was an improper consideration as she was a parent with a right to legal custody. The very language of subsection (1) refers to "an order transferring the legal custody of the child." It is apparent the juvenile court did not consider the mother's right to legal custody of the children. The term "parent" as used in chapter 232 includes "a natural or adoptive mother or father of a child but does not include a mother or father whose parental rights have been terminated." Iowa Code § 232.2(34) (1983). The fact that the mother did not have physical custody of the children prior to these proceedings did not affect her status as a parent or her legal right to custody in the absence of an adjudication.

The dispositional provisions of the CINA statutes provide the juvenile court with three options concerning the legal custody of the juvenile. It could have conditionally suspended judgment for twelve months, section 232.100; entered an order conditionally permitting the children's parent at the time the petition was filed to retain custody, section 232.101; or transferred legal custody to one of the alternate placements listed in section 232.102(1). As previously

indicated, the alternatives for transfer of legal custody in section 232.102(1) do not include placement with a parent who already has the right to legal custody. The juvenile court in this instance passed by the provisions concerning suspension of the judgment or retention of custody by a parent and incorrectly opted to transfer legal custody to the Department. This transfer of legal custody, although merely temporary, also affected the mother's right to legal custody.

■ The transfer of legal custody of children in a dispositional order is prohibited unless the court enters certain findings. This direction is provided in section 232.102 which states in pertinent part:

3. Whenever possible the court should permit the child to remain at home with his or her parent, guardian or custodian. *Custody of the child should not be transferred unless the court finds there is clear and convincing evidence* that:

(a) The child cannot be protected from physical abuse without transfer of custody; or

(b) *The child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance* and an adequate placement is available.

(emphasis added). The definition of child-in-need-of-assistance, section 232.2(5), is extensive, but generally alleges conditions caused by the unfitness of a parent due to either his acts or his failure to act toward the child involved. In this instance, sufficient allegations were made and proved to support a finding that the father was not a fit custodian for these children. However, no such allegations were made or proved with regard to the mother. No real consideration was given her in these proceedings until the dispositional stage, at which time she was pitted against other foster care placement alternatives in a competition to regain physical custody of the child. Her right to legal custody has never been terminated. There has never been a hearing or determination by clear and convincing evi-

dence that her children have suffered or are imminently likely to suffer some harm resulting from her acts or omissions which would justify the adjudication of the children as in need of assistance. It is obvious that the juvenile court did not consider the mother's coexisting right to legal custody of the children when it transferred legal custody of the children to the Department.

■ We conclude that the juvenile court was in error when it did not consider retention of custody by the mother pursuant to section 232.101. This section in pertinent part states as follows:

1. After the dispositional hearing, the court may enter an order permitting the child's parent ... at the time of the filing of the petition to retain custody of the child subject to terms and conditions which the court prescribes to assure the proper care and protection of the child. Such terms and conditions may include supervision of the child and the parent ... by the department of human services, juvenile probation office or other appropriate agency which the court designates....

2. The duration of any period of supervision or other terms or conditions shall be for an initial period of no more than eighteen months and the court, at the expiration of that period, upon a hearing and for good cause shown, may make not more than two successive extensions of such supervision or other terms or conditions of up to twelve months each.

Iowa Code § 232.101 (1983).

■ The purpose of these sections is to keep legal custody of children with a parent whenever possible. We do not interpret section 232.101 to exclude a parent who has a right of legal custody, but did not share physical custody prior to the commencement of the proceedings. This case is not analogous to the situation presented in *In re Blackledge*, 304 N.W.2d 209 (Iowa 1981), in which legal custody had been established in one parent, excluding the other parent. Until there had been an adjudication by clear and convincing evidence that

the children had suffered or were imminently likely to suffer harm resulting from acts or omissions of the mother which would justify the adjudication of the children as children-in-need-of-assistance, the court should not have transferred legal custody of the child to the Department. It should have utilized section 232.101.

■ As an addendum, the juvenile court was not limited to this one result. If it appeared to the juvenile court during these proceedings that the interest of the children demanded an adjudication of the mother's fitness pursuant to section 232.-102(3), the court may have tried this issue with the consent of the parties pursuant to section 232.93. If consent was not given, we believe the court possessed inherent power to protect the interests of the children by continuing the hearing and directing that the petition be amended appropriately for a later hearing on the issue.

*IV. Disposition.* As indicated in division III, the dispositional orders of the juvenile court must be set aside. Unfortunately, the children have been in foster care for 2½ years, except for the 2 months spent with their mother. Nearly a year has passed since the last hearing. The juvenile court is in a better position to determine present conditions. Unless conditions have changed or the mother is determined to be an unfit parent pursuant to section 232.102(3) after notice and hearing, the children should be placed in her custody subject to any terms, conditions and time extensions which the juvenile court prescribes pursuant to section 232.101. If the parties wish permanent settlement of rights to sole custody, they should accept the invitation of the juvenile court to independently litigate this issue.

If the matter of the mother's fitness for custody becomes an issue, the applicability of the ICWA will become an issue. We shall briefly address this question.

The ICWA was passed in response to a perceived pattern of discrimination against American Indians in child welfare and child custody proceedings. Barsh, *The Indian Child Welfare Act of 1978: A Crit-* *ical Analysis,* 31 Hastings L.J. 1287, 1287–96 (1980). There was concern that too many Indian children were removed from Indian homes and deprived of their cultural heritage. 25 U.S.C. § 1901(4) (1982).

■ The Act applies to certain child custody proceedings which involve Indian children. The two children here fall within the Act's definition of Indian children because they are eligible for enrollment in a tribe. 25 U.S.C. § 1903(4) (1982). The Act defines a child custody proceeding to include any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution when the parent or Indian custodian cannot have the child returned upon demand, but parental rights have not been terminated. 25 U.S.C. § 1903(1) (1983). Only delinquency proceedings, § 1903(1), and dissolution proceedings, H.R.Rep. No. 95–1386, 95th Cong., 2d Sess. 12, *reprinted in* 1978 U.S.Code Cong. & Ad.News 7530, are excepted from coverage. A proceeding to determine whether the children are in need of assistance due to the mother's unfitness could result in temporary foster home placement of these Indian children and clearly falls under the ICWA.

■ Section 1915(b) establishes a scheme of foster care preferences under the Act, stating that a preference shall be given, in the absence of good cause to the contrary, to a placement with a member of the Indian child's extended family, a foster home approved by the Indian child's tribe, an Indian foster home, or an institution for children approved by an Indian tribe or operated by an Indian organization. The standard of "absence of good cause to the contrary" may include consideration of the cultural adjustments these children, who have not lived in an Indian environment, would have to make and their individual ability to make those adjustments. Of course, this must be established by testimony of qualified expert witnesses. 25 U.S.C. § 1912(e) (1982). In addition, the rich Indian heritage these children will be deprived of if placed in a white foster home should

be consdidered. 25 U.S.C. § 1915(c) (1982). The cultural and socioeconomic considerations used by the juvenile court to justify its second dispositional order placing these children in a white foster home would clearly be inappropriate under the ICWA; they are not to be considered when removing an Indian child, 44 Fed.Reg. 67,593 (1979), and should not be a basis for a finding of good cause for not following the established foster care preferences. Finally, Congress in its first declaration of policy referred to protection of "the best interests of Indian children." 25 U.S.C. § 1902 (1982). All of these matters should be considered if foster home placement is necessary for these children in the future.

REVERSED AND REMANDED.