# IN THE COURT OF APPEALS OF IOWA

No. 15-1384
Filed October 14, 2015

**IN THE INTEREST OF E.B., V.B.,**
**D.B., and M.E.-B.,**
       **Minor Children**

**B.B., Mother,**
       Appellant,

**S.E., Father,**
       Appellant.
_____

       Appeal from the Iowa District Court for Johnson County, Deborah Farmer

Minot, District Associate Judge.


       A mother and father each appeal from the permanency order changing the

case permanency goal for three of the children from reunification to another

planned permanent living arrangement.  **AFFIRMED ON BOTH APPEALS.**

       Joseph C. Pavelich of Mellon & Spies, Iowa City, for appellant-mother.

       Sally H. Peck, Iowa City, for appellant-father.

       Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney

General, Janet Lyness, County Attorney, and Patricia Weir, Assistant County

Attorney, for appellee.

       Anthony Haughton, Linn County Advocate, guardian ad litem for minor

children.

       Lynn M. Rose of Mears Law Office, Iowa City, for minor children.

       Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, Judge.**

Brenda, the mother of the four children in interest, and Stephen, the father of the youngest child, each appeal from the permanency order changing the case permanency plan goal for three of the children from reunification to another planned permanent living arrangement ("APPLA"), denying the parents' requests for an additional six months to work toward reunification, and directing the State and guardian ad litem (GAL) to consider whether termination of parental rights would be in the best interests of any of the children. The mother also contends the court abused its discretion in denying her request to reopen the record.

I.

The mother has four children: E.B. (born 1998), V.B. (born 2002), D.B. (born 2004), and M.E.-B.[1] (born 2007). The family came to the attention of the Iowa Department of Human Services ("IDHS") in October 2011 after D.B. attempted suicide by hanging himself in the back yard. He was removed from the home in November and placed in a psychiatric medical institute for children ("PMIC"). The State petitioned to have all four children adjudicated in need of assistance in December. In March 2012, the court adjudicated E.B. and D.B. in need of assistance as to their fathers (by default) pursuant to Iowa Code section 232.2(6)(c)(2) and (6)(f) (2011). In May, the court adjudicated all four children in need of assistance pursuant to section 232.2(6)(c)(2), and E.B. and D.B. also pursuant to section 232.2(6)(f). The court continued D.B.'s PMIC placement and

---

[1] Virtually all of the record references to this child give her name as M.E.-B. or just M.B., but the challenged permanency order inexplicably reverses the order of the family names to M.B.-E. For consistency, this opinion uses M.E.-B. when referring to this child.

allowed the other three children to remain in the family home under the protective supervision of the IDHS. The court observed:

> Parental mental illness and medical conditions, lack of follow through with recommended services, failure to appropriately supervise and discipline the children, resistance to intervention, and inability or unwillingness to recognize and acknowledge these issues has, over a period of many years, created a stressful, chaotic, and unpredictable home which has negatively impacted all the children to various degrees. All of the children have received mental health diagnoses warranting psychiatric or remedial services. The three older children[, including D.B.,] have special educational and emotional needs, which are well-documented. Without intensive services, the children's problems, as well as the conditions that have prevailed in the home for the past several years, will certainly fail to improve and will likely worsen.

The July dispositional order concerning E.B., V.B., and M.E.-B. continued their placement in the family home.

In September 2012, Stephen was removed from the home and a no-contact order entered following an incident of domestic violence. After a review hearing in November, the court issued a review order in December that continued the placement of E.B., V.B., and M.E.-B. with their mother. The court expressed a number of concerns, including the mother's "well-documented" instability and parenting deficits "in large part due to her multiple medical and mental health diagnoses" and the lack of any indication the parents were complying with the court's order to "develop and use consistently a system of behavior management, behavior modification, and discipline for the children."

Proceedings concerning D.B., the only child not in the home at that time, followed a separate track. The court held a contested permanency hearing concerning D.B. on November 5, 2012, and January 2 and 13, 2013, and issued

its permanency order on March 19. His disruptive behaviors had escalated significantly in direct correlation to the amount of time he spent with his mother. After the first day of the hearing, D.B. ran in front of a moving school bus because he wanted to kill himself. The court found D.B. could not be returned home "now or at any time in the foreseeable future," but the court also found termination was not in his best interest because of the strong familial identity, his relationship with his siblings, and his age. The court changed the permanency goal for D.B. from reunification to APPLA. This court affirmed on appeal. *In re D.A.B.*, No. 13-0513, 2013 WL 3458148, at *4 (Iowa Ct. App. July 10, 2013). The permanency goal for D.B. has remained APPLA since then.

Following a review hearing in April 2013, the court noted a continued lack of progress despite extensive services. The court scheduled a modification hearing in May "to determine whether one or more of the children need a different placement and/or whether other services should be offered or changes should be made to the Case Permanency Plan." Following a hearing on July 2, the court issued its review order on August 8. The court noted the State and the GAL were not recommending modification. The court continued the prior dispositional orders that E.B., V.B., and M.E.-B. remain with their mother under the protective supervision of the IDHS. The court observed, however:

> The Court continues to find that the situation at home is tenuous, that minimal progress is being made, and that these children are at high risk for not having their needs met, for physical and emotional abuse, and for denial of critical care. Further, their emotional health is clearly in jeopardy. The family is well-intentioned, they love each other, they are bonded to each other, and Brenda is perhaps functioning to the best of her ability. However, it remains an open

question as to whether this will be enough to preserve the physical, mental, and emotional health of these vulnerable children.

On November 4, the court held a review hearing and received evidence V.B. should be removed from the home and placed in foster care after an incident of domestic violence between her and her stepfather, Stephen. The court ordered V.B.'s placement in temporary shelter care pending foster-care placement. This court affirmed the modification order on appeal. *In re V.B.*, No. 14-0315, 2014 WL 2600318, at *5 (Iowa Ct. App. June 11, 2014). She has remained out of the home since her removal.

A February 11, 2014 review order concerning E.B. and M.E.-B. continued their placement with their mother and their permanency goal as "maintain family unification." An April 14 order following an updated progress report from the IDHS continued V.B.'s placement in foster care and scheduled a modification hearing concerning E.B. and M.E.-B. to determine whether they should be removed from the mother's care. On May 20, after the scheduled modification hearing was not completed, the court entered a temporary shelter/modification order placing E.B. and M.E.-B. in temporary shelter care, based on a finding the children

> cannot any longer remain safely in the family home and that remaining in the home would be contrary to the children's best interests due to repeated episodes of physical violence between family members, failure of the mother to meet the need of the children for appropriate supervision and discipline, and that the children's mother has demonstrated, over an extended period of time, a complete failure to manage the behavior of the children in such a way as to ensure even their basic physical safety.

The court further found:

> [The IDHS] has made reasonable efforts to prevent the removal of the children from the home. In fact, the panoply of services that have been provided to this family can only be described as extraordinary. Virtually every conceivable service has been made available to the family. None of these services have resulted in anything more than temporary improvement in some of the expectations of the Case Permanency Plan. Further, there is overwhelming evidence that the home life of these children has continued to deteriorate over the past several months to the point whether their physical and emotional health and safety are at imminent risk.

The court ordered E.B.'s placement in a youth shelter so he could finish the school year in the same school. The court ordered M.E.-B.'s placement in foster care "in light of [her] young age." Following completion of the evidentiary hearing in late May, the court filed its order modifying disposition of E.B. and M.E.-B. to place them in the guardianship of the IDHS for placement in foster family care. They have remained out of the home since their removal.

All of the children's cases came on for permanency review in March 2015, but because Brenda requested an evidentiary hearing, the court scheduled a contested permanency hearing in May. After various motions and continuances, the court heard evidence on June 19 and 23 and issued the permanency order giving rise to this appeal on July 31.

The court's order carefully and thoroughly reviews the history of this family and IDHS's efforts to keep this family intact. The court noted Brenda's lack of progress in dealing with her mental and physical health issues, in completing the goals of the case permanency plan, or in remedying her parenting deficiencies. It also noted Stephen was "technically homeless" and unemployed. The court concluded:

There is no evidence that shows that the children can be returned home now or in the foreseeable future, or ever. Nothing has changed from the observations made by the Court in its July 7, 2014 ruling regarding modification of prior dispositional orders for [E.B. and M.E.-B.]. Nothing has really changed since the beginning of these cases, except that the futility of pursuing the goal of reunification has now been established beyond all doubt. Brenda and Stephen are profoundly disabled adults. They cannot take care of themselves. They cannot take care of the children. There is virtually no chance this will ever change.

The court expressed optimism for the children, however, noting their "remarkable capacity for change." Once removed from Brenda's care, "the children began to make notable physical, medical, and developmental progress," to the point that "almost all their medical problems have been resolved and their medications have been reduced or even eliminated." Despite the children's emotional needs being "much more complex and much less easily resolved, the outlook is more promising than ever." The court found termination was not in the children's best interests, "due to their strong familial identity, and their relationship with each other and the other siblings." It further found termination was not in E.B.'s or V.B.'s interest because of their age, but termination and adoption should be considered as a permanency option for D.B. and M.E.-B.

The court, "pursuant to stipulation of the parties," continued both E.B. and D.B. in the custody and guardianship of the IDHS, left D.B.'s APPLA permanency goal unchanged, and changed E.B.'s permanency goal to APPLA. "Based on the findings and conclusion" the court made, it continued V.B. and M.E.-B. in the custody and guardianship of the IDHS and changed their permanency goals to APPLA. It also directed the IDHS, county attorney, and GAL to consider whether

termination would be in the best interests of any of the children and, if so, to file termination petitions or reports and recommendations.

## II.

Review of permanency orders is de novo. *In re A.A.G.*, 708 N.W.2d 85, 90 (Iowa Ct. App. 2005). We review both the facts and the law and adjudicate rights anew on the issues properly presented. *Id.* We give weight to the juvenile court's findings, but are not bound by them. *Id.*

## III.

After a permanency hearing, the court has a number of options. *See* Iowa Code § 232.104(2)(a)-(d). It can return the child home; continue placement for six months if it finds the need for removal will no longer exist after six additional months; direct the State to pursue termination; or, if it finds termination is not in the child's best interests, services were offered to correct the circumstances leading to removal, and the child cannot be returned home, order guardianship and custody transferred to a suitable person, order sole custody with the other parent, or order APPLA. *See id.* § 232.104(2)-(3).

## A.

Stephen contends clear and convincing evidence does not support the court's finding he had not made any progress since the adjudication hearing, resulting in (1) the court's denial of his request for additional time and (2) the court's order changing the permanency goal to APPLA and directing investigation whether termination was in M.E.-B.'s best interest. He argues he has complied with requests for training, has completed his training as a chef, and has been

receiving regular care for his psychological and physical ailments. He disagrees with the court's findings he has not made sufficient progress on IDHS expectations, his job seeking attempts are only recent, he declined parent-partner services, and M.E.-B. was regularly abused by V.B.

From our review of the record, we conclude M.E.-B. could not have been placed in Stephen's care at any time since he left the family home following the domestic violence incident. In order to extend the time for reunification, clear and convincing evidence would have to support a finding the need for removal would no longer exist at the end of the six-month extension. *See* Iowa Code § 232.104(2)(b). A year before the challenged permanency order, the court stated, "Steve will need to demonstrate the ability to maintain a safe and stable home, to participate in and benefit from parenting and other services, and to be honest. To date, there is no evidence indicating any of these changes can or will occur." Nothing changed in the ensuing year. Stephen has not had a home for M.E.-B. nor means of supporting her. Neither we nor the district court could make the required finding the need for removal would no longer exist after an additional six months.. *See id.* § 232.104(2)(c); *In re J.E.,* 723 N.W.2d 793, 798 (Iowa 2006) (stating we look to a parent's past performance "because it may indicate the quality of care the parent is capable of providing in the future"). We agree with the court's determination termination was not in the children's best interest at the time of the permanency hearing, and we affirm the order changing the permanency goal for M.E.-B. to APPLA. Stephen's challenge to that portion of the order directing continued consideration whether termination would be

appropriate is without merit. *See id.* § 232.104(2)(c) (providing the court can direct that termination proceedings be instituted). We affirm the permanency order on Stephen's appeal.

B.

Brenda challenges the court's modification of the permanency goal for V.B. and M.E.-B from reunification to APPLA. Alternatively, she seeks a six-month extension of time for reunification with V.B. and M.E.-B.

Over the four-year course of these proceedings, Brenda has repeatedly demonstrated her inability to parent her four children, either as a single parent or while married to Stephen. The court and IDHS worked extremely diligently to keep the children in the family home. One year prior to the order challenged in this appeal, the court explained, "With the benefit of hindsight, it seems that the fierce devotion to the goal of family unification, pursued with the best and noblest of intentions, has resulted in substantial harm to these children. Whether that harm can be addressed, ameliorated, or healed is an open question." At that time, D.B. and V.B. were already out of the home, and the court removed E.B. and M.E.-B. In the ensuing year, the record shows the children were healing both emotionally and physically in large part because they were out of Brenda's care. Brenda has mental and physical issues that affect her ability to manage all the children. Clear and convincing evidence supports a finding the children could not be returned to Brenda's care at the time of the permanency hearing. Considering both her past performance and the lack of any significant change in the year prior to the permanency hearing, we conclude neither the court nor we

could make the required finding the need for removal "would no longer exist" at the end of an additional six months. *See* Iowa Code § 232.104(2)(c). Consequently, there is no basis to extend the time for permanency by six months.

Considering E.B.'s and V.B.'s age, the children's familial identity, their continued bond with Brenda (with perhaps the exception of D.B.), and with each other, we agree termination was not in the children's best interests at the time of the permanency hearing. The resulting modification of the permanency goals for E.B., V.B., and M.E.-B. to APPLA was appropriate. We affirm the change in permanency goals.

### C.

Brenda contends the court abused its discretion in denying her request to reopen the record and allow testimony and evidence concerning changing E.B.'s permanency goal to APPLA and continuing D.B.'s goal as APPLA. The district court denied the request to reopen the record after Brenda had changed her position on the issue several times resulting in delay of these proceedings.

In considering an application to reopen the record, the district court is in the best position to determine what is "necessary and appropriate to achieve substantial justice." *State v. Long*, 814 N.W.2d 572, 576 (Iowa 2012). To that end, the district court has broad discretion to reopen the record and consider additional evidence, and its "decision will ordinarily not be interfered with by a reviewing court." *Id.* (citation omitted); *see also In re J.R.H.*, 358 N.W.2d 311, 318 (Iowa 1984).

The permanency order sets forth in detail the events surrounding the multiple permanency hearings. Based on Brenda's initial stipulation of agreement concerning E.B. and D.B., the State did not present evidence concerning them because their permanency was uncontested. At the next hearing, E.B. was no longer present and the hearing concerned Stephen's challenge to the proposed change in M.E.-B.'s permanency goal. Brenda reversed her decision to stipulate and sought to introduce evidence to contest the permanency goals for E.B. and D.B. Under the circumstances, we cannot say the court abused its broad discretion in denying Brenda's application.

IV.

For the foregoing reasons, we affirm the permanency order and the court's denial of Brenda's request to reopen the record.

**AFFIRMED ON BOTH APPEALS.**