# IN THE COURT OF APPEALS OF IOWA

No. 22-1839
Filed February 8, 2023

**IN THE INTEREST OF L.S. and C.S.,**
**Minor Children,**

**A.M., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton Ploof, District Associate Judge.

A mother challenges the juvenile court's dispositional finding that the State has made reasonable efforts to return her children to her custody. **AFFIRMED.**

Grishma Arumugam, Davenport, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie L. Moran, Assistant Attorney General, for appellee State.

Jennifer Olsen of Olsen Law Firm, Davenport, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

A mother contends that the Iowa Department of Health and Human Serivces has not made reasonable efforts to return her children, L.S. born in 2020 and C.S. born in 2021, to her custody. Her contention focuses on the slow progression of her visits with the children. She also argues the juvenile court used an incorrect standard in deciding her reasonable-efforts claim.

Like the mother, we find the department should have acted with more urgency in scheduling visitation with her children early in the case. But we also agree with the juvenile court that circumstances required "taking a careful approach . . . for the safety of these children." At this time, we reject the mother's reasonable-efforts challenge.[1]

This case opened in April 2022 when the mother had a physical fight with the children's paternal grandmother and drove away, while intoxicated, with six-month-old C.S. in the car. Child protective services returned a founded assessment of improper supervision by the mother. The parents agreed to a safety plan with the department.[2] But one month later, the mother fought with the father and attempted suicide. After being released from the hospital, she admitted to stopping her mental-health medication and drinking alcohol. The parents signed a new safety plan in June, agreeing that the mother would not watch the children without supervision and would be a sober caretaker. In violation of that plan, the

---

[1] The mother appeals from a dispositional order. In child-welfare cases, we review the evidence de novo. *In re J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984).
[2] This safety plan provided that both parents would maintain sobriety while parenting the children; there would be no physical altercations around the children; and the mother would obtain a substance-abuse evaluation and follow through with its recommendations.

mother took the children to an out-of-town wedding and cared for them at the motel—by herself, while intoxicated. Child protective services again returned a founded assessment of improper supervision by the mother.

In July, the juvenile court adjudicated C.S. and L.S. as children in need of assistance (CINA) and placed them in their father's custody. By the time of the adjudication hearing, the mother had entered treatment.

At the CINA disposition hearing in October, the mother's counsel argued that the department was not making reasonable efforts to reunite her with the children. For starters, after the CINA adjudication, the department did not set up visitation for three or four weeks despite the mother's requests. According to counsel, "[t]hey wouldn't cooperate with her, get her the schedule. They would ask her for her employment, she provided the past supervisor a number of timesheets and still they wouldn't really get her visits set up. So she was pretty frustrated." The mother also asserted the case worker did not contact her from July to September. The department did not counter that assertion. In fact, case work manager Christopher Moeller testified at the disposition hearing that he remembered the mother telling him that she "did not have a lot of communication" with the first worker assigned to the case. He also testified that he believed that the department had at first allowed the father to supervise the mother's interactions with the children.

That supervision by the father was a point of contention. In her petition on appeal, the mother claims that two providers knew that the father was supervising her daily interactions with the children, and she "continued having daily and overnight visits for two months without any concerns." But a new caseworker

stopped that arrangement and reduced her visits to just two-hour sessions twice weekly supervised by the service provider.

Moeller confirmed that the department now believed that the father "should not be approved to supervise the visits." The court agreed, telling the mother that the court wanted the service provider "to be the eyes for the visits so we can quickly move to unsupervised or semi-supervised" visits. The court explained its preference for professional supervision: "Because she's somebody that's going to be neutral, understands parenting and any kind of risk to safety that we have to worry about."

As its bottom line, the court found that the department had provided reasonable efforts to facilitate the goal of reunification. It acknowledged: "While the schedule may not be to the mother's liking, the court finds that taking a careful approach is necessary for the safety of these children due to their age and inability to self-protect or care for themselves if their mother is again ill." The mother contests that finding.

In her petition on appeal, the mother asks us to reverse the dispositional order. She argues the juvenile court applied an "incorrect standard" in rejecting her reasonable-efforts challenge. In her words, "[T]he court made clear its belief the mother had no basis to claim [the department] failed to make reasonable efforts because she should not be complaining about what the social workers aren't doing that she is manipulating."

In assessing the mother's claim, we start by defining "reasonable efforts." That term forms the foundation of the State's duty to protect the integrity of the family whenever possible. It means "the efforts made to preserve and unify a

family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home." Iowa Code § 232.102A(1)(a) (2022). "A child's health and safety shall be the paramount concern in making reasonable efforts." *Id.* The department must make reasonable efforts to reunite parent and child before moving forward with the termination of parental rights. *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

Key to this appeal, reasonable efforts include "visitation designed to facilitate reunification while providing adequate protection for the child." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Indeed, "[v]isitation between a parent and child is an important ingredient to the goal of reunification." *M.B.*, 533 N.W.2d at 345. Experts maintain that the frequency of family time is a "strong predictor of children being united with their parents." *See* Leonard Edwards, *Reasonable Efforts: A Judicial Perspective* (2d ed. 2021) at 49. Still, "the nature and extent of visitation is always controlled by the best interests of the child." *M.B.*, 533 N.W.2d at 345.

The mother made an appropriate demand for reasonable efforts after the CINA adjudication. And the record supports her assertion that the department was slow in scheduling supervised visits. We often lecture parents that "the crucial days of childhood" cannot be suspended while they work to correct their problems. *See generally In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). That same urgency must apply to the department's efforts. The workers should have been able to set up visitation between the mother and children within a month of adjudication.

That said, the evidence at the disposition hearing shows that the department was making a more concerted effort to ensure that the mother was

having more frequent and safe interactions with her children. To that end, manager Moeller testified that, on top of the professionally supervised visits, the department had approved the maternal grandmother to oversee additional interactions between the mother and children.

And contrary to the mother's arguments, we do not find the juvenile court applied a faulty standard in assessing reasonable efforts. The court's reference to the mother's "manipulation" referred to her interactions with the father, not with the department. The court evaluated the totality of the department's reunification efforts to date and judged them reasonable. Like the juvenile court, we find that the department met the reasonable-efforts standard at the time of the hearing.

**AFFIRMED.**