**In the Interest of C.W. and B.W., Children, L.D.W., Mother, Appellant.**

No. 3–69466.

Court of Appeals of Iowa.

Oct. 25, 1983.

As Corrected Jan. 16, 1984.

Kjas T. Long of Gottschalt, Shinkle & Long, Cedar Falls, for appellant mother.

Thomas J. Miller, Atty. Gen., and Brent Hege, Asst. Atty. Gen., for appellee State.

Stanford Patterson of Patterson Law Firm, Waterloo, for children.

Heard by OXBERGER, C.J., and DONIELSON, SNELL, SCHLEGEL, HAYDEN, and SACKETT, JJ.

SCHLEGEL, Judge.

L.W. appeals from a juvenile court order terminating her parental rights in her two natural children, C.W. and B.W., pursuant to Iowa Code section 232.116(5) (1981). She contends that the juvenile court should have declined to terminate her parental rights pursuant to Iowa Code section 232.116(6)(c), that Iowa Code section 232.116(6)(c) improperly shifts the burden of proof to the natural parent, that the trial court should not have admitted evidence of acts she committed several years prior to the hearing, and that the trial court was biased against her. We affirm.

■ I. Scope of Review. Principles of appellate review of proceedings to terminate a parent-child relationship are well known. Our review is **de novo**; thus, we review the facts as well as the law and adjudicate rights anew on those propositions properly preserved and presented to us. *In the Interest of T.D.C.*, 336 N.W.2d 738, 740–41 (Iowa 1983); *In the Interest of Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). *See* Iowa R.App.P. 14(f)(7). The principles established in the above cited cases are equally applicable here.

■ II. Constitutionality of Section 232.116(5). L.W. initially asserts that Iowa Code section 232.116(6)(c) improperly shifts

the burden to the natural parent by requiring the parent to show by clear and convincing evidence that such termination would be detrimental to the child due to the closeness of the parent-child relationship. The supreme court held in *In the Interest of C. and K.*, 322 N.W.2d 76, 81–82 (Iowa 1982), *appeal dismissed*, —— U.S. ——, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983), that section 232.116(6) does not shift the burden of proof to the natural parent. The State, which relies upon section 232.116(5)(a)(b)(c) in this case, is required to show by clear and convincing evidence that L.W.'s children cannot be returned to her as provided in section 232.102.

III. Evidence of Past Acts of Mother. L.W. asserts that the juvenile court erred in admitting evidence of her past conduct as a parent. L.W. argues that admitting evidence of acts which occurred one to four years prior to the hearing was a violation of due process because she had no notice that she would be required to defend those acts and that those acts were irrelevant to her present parenting abilities. L.W.'s first contact with the Iowa Department of Social Services occurred on October 6, 1978, when she voluntarily requested foster care for her children. The children were adjudicated to be children in need of assistance on May 11, 1979. The present termination proceeding was commenced on March 4, 1982. L.W. seeks to exclude all evidence except that which occurred within the last year. We disagree.

■■■ Insight for determination of what the future likely holds for a child if returned to his or her parent can be gained from evidence of the parent's past performance. *In the Interest of Dameron*, 306 N.W.2d at 745. It is true that a parent, through self-improvement and assistance from professionals and social agencies, may overcome the badges of poor parenthood and immaturity. The passage of time since the alleged parental misconduct, therefore, affects the weight to be given to the evidence rather than its admissibility. *See In the Interest of Long*, 313 N.W.2d 473, 497 (Iowa 1981). Moreover, the peti-

tion in this action notified L.W. that it was being brought pursuant to section 232.-116(5). Section 232.116(5)(c) specifically refers to Iowa Code section 232.102. The central issue presented was L.W.'s parenting skills. L.W.'s contention that she had no prior notice that her prior parental misconduct would be scrutinized is without merit.

■■■ IV. Admission of Expert Testimony. L.W. next complains that the testimony of psychiatric social worker, Irene Plogman, was admitted into evidence without an adequate foundation of expertise. L.W. asserts that the witness was not qualified to testify in the area of child psychiatry. Miss Plogman was employed as a clinical psychiatric social worker for Black Hawk County Psychiatric Associates. She had been employed by them for six years and specialized in child therapy and child psychiatry. Miss Plogman held a bachelor's degree and a master's degree in social work. She attended several seminars in child abuse and neglect and child psychiatry.

■■■ We believe the juvenile court did not abuse its discretion in admitting the testimony. We, as trier of fact, are free to accept or reject the opinions of experts. *In the Interest of Long*, 313 N.W.2d at 482. Moreover, the Iowa courts have long been committed to a liberal rule on the admission of opinion testimony and have accorded trial judges wide discretion in their rulings on evidentiary matters. *State ex rel. Leas In the Interest of O'Neal*, 303 N.W.2d 414, 420–21 (Iowa 1981). The juvenile court did not abuse its discretion.

IV. Merits of the Parental Termination. On appeal the mother presents the issue of whether there is clear and convincing evidence to justify termination of parental rights. She argues that the juvenile court erred in granting the termination of parental rights because the termination of parental rights would be detrimental to the children due to the closeness of the parent-child relationship.

Under our *de novo* review we examine the record and initially note the background of the mother. L.W. was 17 years of age when C.W. was born and 18 years of age when B.W. was born. L.W. testified during trial that she had also been the victim of abuse during her childhood. L.W. was not married at the time of the birth of her children and has not married since. She has held only two jobs for a short time since she first contacted the Department of Social Services in 1978, but she recently obtained her G.E.D. and is now working towards the successful completion of a welding course at a technical school. Expert testimony indicated that L.W.'s ability to relate to both adults and children is limited. It was also noted that she has a reckless disregard for her actions and that she does not have the ability to plan ahead. Further, it was indicated that L.W. had the ability to sustain only short periods of motivation and that without sustained motivation there is little chance that she can change. L.W. was charged and eventually pled guilty to charges of prostitution and third degree theft in December, 1980, while she had custody of the children. Although L.W. voluntarily sought assistance from the Department of Social Services in 1978, her dealings with the case workers and homemakers has been characterized since then by active resistance to their attempts to help her and the children.

The record in this case is long and contains exhaustive testimony concerning L.W.'s parenting abilities and the adverse impact of her conduct upon the children. Briefly, L.W. voluntarily sought assistance with her children in 1978. B.W. was placed in foster care and C.W. was returned after a short period. L.W.'s family discovered C.W. alone, after which C.W. was also placed in foster care. The children were both adjudicated to be children in need of assistance in May, 1979, after L.W. failed to exercise regular visitation. The children were placed in the home of the maternal grandmother in May, 1979. L.W. also resided with the children. After a period of improvement, L.W. was permitted to remove the children from her mother's home in April, 1980. L.W. was unable to maintain the improvements in parenting and the children once again began to suffer developmental delays.

L.W. moved seven times during the period from April, 1980 to January, 1981. Attendance by the children at a day care center where they were being given developmental assistance was sporadic. L.W. also refused to cooperate with the Department of Social Services in the provision of homemaker services and attendance at parenting classes. The children's care, custody and control remained, pursuant to court order, with the Department of Social Services throughout this period. The department began to receive child abuse referrals in October, 1980, and L.W. was arrested in December, 1980, for the crimes mentioned above. Also throughout this period, L.W. entered various social contracts with the department to make changes and improve herself. Her performance on these contracts was sporadic with compliance being achieved only when L.W. lived with her mother or in periods shortly before various court hearings.

The responsibility for the children's physical care was taken from L.W. in February, 1981, and the children were placed in foster care. L.W. exercised her visitation with the children four times during the period between January 28, 1981, to May, 1981. Because of adverse impact upon C.W., her visitation rights with him were eventually denied.

The present action was filed on March 4, 1982. L.W. has moved back in with her mother and seems to once again have stabilized her personal life. All three expert witnesses agreed, however, that custody of the children should not be immediately returned to L.W. Dr. Merle Robinson, a psychiatrist, testified for L.W. that in his opinion the parental rights of L.W. should not be terminated. The other two experts recommended immediate termination.

The parties have stipulated, and we find that the grounds set forth in Iowa Code section 232.116(5)(a) and (b) (1981),

have been shown by clear and convincing evidence. Moreover, we find in our **de novo** review, that L.W. is unfortunately unable to provide C.W. and B.W. with the minimal care that is necessary for their normal development. The fact that L.W. is once again beginning to show some hope of stabilizing her own life does not change this finding. Past evidence indicates these attempts are unlikely to be sustained. Child custody should be quickly fixed and little disturbed. *In the Interest of Voeltz,* 271 N.W.2d 719, 724 (Iowa 1978). Moreover, we do not believe the evidence shows that C.W. and B.W. are unusually "bonded" to L.W. We recognize that the right of a natural parent in the care, custody, and management of the child allows a rebuttable presumption that the best interest of the child is served by giving custody to the natural parent. *In the Interest of T.D.C.,* 336 N.W.2d at 740. The child, however, is not required to await their mother's maturity. *Id.* at 744. If these children are going to have a chance at life, it must be in another setting.

 VI. Bias. L.W. finally contends that the juvenile court unduly interfered in her cross-examination of a witness. We have reviewed the record and conclude that these allegations are without merit. The record does not disclose that remarks and rulings made by the court, which tried the case without a jury over a seventeen day period, show bias or prejudice on part of the court.

AFFIRMED.