**In The INTEREST of C.M.,**
**A Minor Child,**

**T.G., Mother, Appellant.**

**No. 93–1904.**

Court of Appeals of Iowa.

Nov. 28, 1994.

Thomas Diehl, Asst. Public Defender, until his withdrawal, and then Steven G. Klesner, Iowa City, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., and Linda Paulson and Deborah Farmer Minot, Asst. County Attys., for appellee State.

Constance Peschang Stannard of Harris & Stannard, Iowa City, for appellee minor child.

Richard H. Zimmermann of Zimmermann Law Office, until his withdrawal, and then Kelly D. Steele, Iowa City, for father.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HAYDEN, Presiding Justice.

On April 21, 1993, Tammy's parental rights with respect to her daughter, Alivia, were terminated. Termination was affirmed in *In re A.F.*, 526 N.W.2d 581 (Iowa App.1994).

On May 18, 1993, Tammy gave birth to C.M. C.M. was removed from Tammy's care by emergency order on May 19, 1993, after nursing staff expressed concern about her ability to parent the infant. A petition to adjudicate C.M. a child in need of assistance (CINA) was filed on May 24, 1993. On June 11, 1993, after an emergency removal hearing, the juvenile court ordered C.M. returned to Tammy under the protective supervision of the department of human services (DHS).

On August 24, 1993, a child abuse investigation resulted in a founded report of denial of critical care. Tammy had failed to medicate C.M. as prescribed.

On September 8, 1993, C.M. was admitted to the hospital for observation upon a tentative diagnosis of failure to thrive. Medical personnel eventually determined C.M. suffered from a sucking and swallowing prob-

lem. A feeding regimen was developed and was to be taught to Tammy over a seventy-two-hour period. Tammy did not demonstrate her ability to follow the regimen to the personnel's satisfaction.

The adjudication hearing was held on September 22 and 28, 1993. On September 29, 1993, an emergency removal order issued, and C.M. was discharged from the hospital to foster care. On October 21, 1993, the juvenile court found Tammy had difficulty with basic matters of child care, failed to acknowledge a need for assistance, and failed to demonstrate the ability to follow the necessary feeding regimen. C.M. was adjudicated to be CINA pursuant to Iowa Code sections 232.2(6)(b) (1993) (neglect of child), 232.2(6)(c) (failure to exercise reasonable care), and 232.2(6)(n) (mental capacity or condition, imprisonment, or drug or alcohol abuse results in child not receiving adequate care). On November 17, 1993, following a disposition hearing, C.M. remained in foster care.

Tammy now appeals. She raises four issues. Tammy contends (1) the fact findings of the juvenile court are not supported by the evidence; (2) the court erred in considering evidence from a prior termination proceeding involving a different daughter; (3) the State did not make reasonable efforts at reunification; and (4) she was not afforded reasonable accommodation of her disability as required by federal law. We affirm.

## I. *Juvenile Court Findings.*

The mother contends the juvenile court erred by making inaccurate findings of fact with respect to her parenting abilities. She further argues there was insufficient evidence to adjudicate C.M. to be CINA. We disagree.

Appellate review of a juvenile court's finding of CINA is de novo. *In re J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984) (citation omitted). Of paramount concern is the welfare and best interest of the child. *Id.*

The reviewing court must review the record to determine whether the finding of CINA is supported by clear and convincing

evidence. Iowa Code § 232.96(2) (1991). Although, on review, the court is not bound by the findings of the juvenile court, "we give weight to the juvenile court's findings of fact because the juvenile court has had the unique opportunity to hear and observe the witnesses firsthand." *In re S.V.*, 395 N.W.2d 666, 668 (Iowa App.1986).

■ In the trial record there is evidence demonstrating (1) Tammy refused to follow medical advice both before and after C.M.'s birth; (2) C.M. was hospitalized in September 1993 due to failure to thrive; (3) C.M. was diagnosed as having a subtle neurological swallowing problem; (4) C.M. requires a specific feeding regimen with special bottles which Tammy has not shown an ability to follow and use; (5) without proper care, because of her special needs, C.M. was at risk for improper development of her brain and nervous systems as well as increased susceptibility to illness such as pneumonia; (6) Tammy did not properly administer C.M.'s medication for an ear infection; (7) despite the foregoing, Tammy was resistive to services provided by DHS. We do not find any inaccurate findings of fact made by the juvenile court.

Under these circumstances, the juvenile court properly found C.M. to be CINA. The evidence was clear and convincing. Several statutory grounds support the juvenile court's adjudication. *See* Iowa Code §§ 232.2(6)(b) (1993) (neglect of child); 232.2(6)(c) (failure to exercise reasonable care); and 232.2(6)(n) (mental capacity or condition results in child not receiving adequate care).

## II. *Evidence from Prior Termination Hearing.*

Tammy further contends the juvenile court erred in allowing evidence from a prior termination of her parental rights as to another daughter. We disagree.

■ Iowa case law has consistently held that evidence meeting the test of relevancy and materiality required in a CINA proceeding may be similarly admitted and relied upon in a termination proceeding to the extent of its probative value. *In re E.J.R.*, 400

N.W.2d 531, 532 (Iowa 1987) (citing *In re O'Neal*, 303 N.W.2d 414, 421 (Iowa 1981); *In re Adkins*, 298 N.W.2d 273, 277 (Iowa 1980); *Harter v. State*, 260 Iowa 605, 608, 149 N.W.2d 827, 829 (1967)). The reverse must necessarily be true: if relevant and material, evidence from a termination proceeding may be admitted in a later CINA hearing to the extent of its probative value.

■ The facts which led to the termination were relevant and material to C.M.'s situation. The termination of Tammy's parental rights took place only a month before the birth of C.M. In determining what is in the best interest of the child, the court necessarily looks at past performance "for that performance may be indicative of the quality of the future care that parent is capable of providing." *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981) (citations omitted); *see also In re C.W.*, 342 N.W.2d 885, 887 (Iowa App. 1983) (admission into evidence of mother's past conduct as parent, which conduct occurred up to four years prior to hearing, was not error).

■ Furthermore, even if admission of the evidence was error, it was harmless. Our de novo review shows us without this evidence the juvenile court had more than enough proof to support its decision. *See, e.g., In re T.C.*, 492 N.W.2d 425, 429–30 (Iowa 1992) (in termination proceeding, admission of evidence of father's juvenile criminal record was error, but the error was harmless); *see also In re N.M.W.*, 461 N.W.2d 478, 480–81 (Iowa App.1990) (evidence of parent's past actions which formed basis of prior CINA proceedings may be considered in new CINA proceeding as long as there is other clear and convincing evidence as basis of new CINA proceeding). Other clear and convincing evidence exists to find C.M. to be CINA, independent of the prior termination hearing.

## III. *Family Reunification Efforts.*

■ Tammy contends the juvenile court erred in not ordering intensive family preservation services, especially in light of her disability. We disagree.

Tammy clearly did not request such services. She did not give any indication she would cooperate with such services. She continued to maintain she required no parenting assistance until the disposition hearing. Rather than accepting services, the record shows Tammy refused respite care and parenting skill sessions.

The record is replete with services which Tammy has been offered in the past. Still, Tammy is unable to document C.M.'s food intake in a reliable manner. Without proper feeding, C.M. is at risk of suffering from severe developmental problems. The juvenile court properly placed C.M. in foster care given the extensive history of services offered and received by the mother and her resistance to these services.

### IV. *Reasonable Accommodation.*

Tammy lastly seeks the protection of the Americans with Disabilities Act (ADA). 42 U.S.C. §§ 12101–12213 (1993). The ADA prohibits a public entity from discriminating against a disabled person by excluding her from participation or by denying the benefits of public services, programs, or activities. *Id.* § 12132. The ADA requires the public entity to make "reasonable accommodation" to allow the disabled person to receive the services or to participate in the public entity's programs. 28 C.F.R. § 35.130(b)(7) (1994). Tammy claims DHS did not reasonably accommodate her personality disorder.

■ To begin, this issue was not raised in the juvenile court. As a general rule, an issue not presented in the juvenile court may not be raised for the first time on appeal. *In re R.J.*, 495 N.W.2d 114, 117 (Iowa App.1992) (termination proceeding) (citation omitted).

■ Even if we did address the merits of this issue, the lengthy list of services provided to the mother included many who were well aware of her personality disorder. These providers were trained to work with persons having such disorders. Reasonable accommodations were made.

In conclusion, the juvenile court's order adjudicating C.M. to be a child in need of assistance and placing her in foster care is affirmed. The mother demonstrates poor parenting skills, and she resists services offered her. The child has special needs and will be at great risk for long-lasting developmental problems if left in the mother's custody.

### AFFIRMED.

HABHAB, J., concurs.

SACKETT, J., specially concurs without opinion.