# IN THE COURT OF APPEALS OF IOWA

No. 19-1261
Filed October 9, 2019

**IN THE INTEREST OF B.N. and I.N.,**
**Minor Children,**

**A.N., Father,**
    Appellant.

_____

    Appeal from the Iowa District Court for Pottawattamie County, Eric J. Nelson, District Associate Judge.

    A father appeals the adjudication of his two daughters as children in need of assistance. **AFFIRMED.**

    J. Joseph Narmi, Council Bluffs, for appellant father.

    Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

    Roberta J. Megel of State Public Defender Office, Council Bluffs, attorney and guardian ad litem for minor children.

    Considered by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

A father, Alex, appeals the juvenile court's adjudication of his two daughters, six-year-old I.N. and two-year-old B.N., as children in need of assistance (CINA). Alex contends the court mistakenly excluded exhibits he offered at the hearing. He also argues the State failed to present clear and convincing evidence to prove the elements of Iowa Code section 232.2(6)(b), (c)(2), or (n) (2019). Because the evidentiary rulings were not prejudicial and the record contains sufficient proof of the grounds for CINA adjudication, we affirm.[1]

## I. Facts and Prior Proceedings

This case started with a contentious incident in late March 2019 when I.N. and B.N. had weekend visitation with their father. On Saturday night, B.N.'s mother, Deven, received a series of text messages from Alex that made her worry for her daughter's safety. Deven called I.N.'s mother, McKayla. And together they went to Alex's house after midnight to investigate. They knocked on his door but received no answer. Then, through the basement window, they saw Alex's girlfriend, Melissa, strike him in the face. Concerned about their children, Deven and McKayla entered Alex's home without permission using a spare key Deven still had. They found B.N. awake upstairs. Meanwhile, Alex and Melissa were

---

[1] Despite our overarching de novo standard of review in juvenile proceedings, *In re C.M.*, 526 N.W.2d 562, 564–65 (Iowa Ct. App. 1994), we assess subsidiary rulings, like those excluding evidence, for an abuse of discretion. *In re N.N.*, 692 N.W.2d 51, 54 (Iowa Ct. App. 2004). We will reverse an evidentiary ruling only if the record shows prejudice to the complaining party. *See State v. Hildreth,* 582 N.W.2d 167, 170 (Iowa 1998). On the sufficiency issue, we must decide whether the CINA adjudication is supported by clear and convincing evidence. Iowa Code § 232.96(2). We are not bound by the juvenile court's fact findings, but we give them weight because that court "has had the unique opportunity to hear and observe the witnesses firsthand." *C.M.*, 526 N.W.2d at 565.

drinking alcohol in the basement. Using her cell phone, one of the mothers recorded a video purporting to show that Alex and Melissa were intoxicated.

The following Monday, April 1, McKayla reported the incident to child protection intake at the Iowa Department of Human Services (DHS). A few days later, a child protection worker launched an investigation. Alex refused the investigator's request for a "walk-through" of his home. She also offered him referrals to obtain chemical-dependency and mental-health evaluations. He declined.

The investigator did "walk-throughs" at the homes of McKayla and Deven—spotting no concerns. She then interviewed I.N. The six-year-old told the investigator she did not feel safe at her father's house because he drinks alcohol "that looks like water." I.N. reported many times during visitation she has tried to wake up her father after he has been drinking, but he does not respond. When her father won't get up, I.N. has been left to care for her two-year-old sister. I.N. recalled changing diapers, getting B.N. dressed, and finding food for them to eat. The juvenile court summarized I.N.'s revelations:

> She said she can smell alcohol on his breath and she does not like it when he is drunk because he is easily angered. [I.N.] reported that when her dad gets mad when he is drinking, his face turns red and he cl[e]nches his fists. Also, when he becomes angry, he slams cabinets, hits walls, and has hit her on her neck with a sock. [I.N.] said her father also screams in her face when he is drinking.

In mid-April, the State filed a petition alleging I.N. and B.N. were CINA. Alex did not cooperate with the DHS requests for drug testing. He told the DHS investigator that child-support and child-custody disagreements fueled the allegations from the girls' mothers.

The court heard from two witnesses at the adjudication hearing: the child protection worker and Alex. The worker believed the children were in need of assistance based on "the concerns that [I.N.] reported at her dad's house, and Alex's refusal to participate in any way." The worker also testified that Deven accused Alex of domestic violence in 2017 but asked to have the charges dismissed.

For his part, Alex testified he had a "great relationship" with his daughters. He said he was employed but behind in his child support payments. He explained he had heart surgery in May 2018 and received short-term disability payments. He acknowledged drinking alcohol the night of the reported incident but denied being intoxicated. According to Alex, text messages from Deven prompted an argument with his girlfriend Melissa that night. He admitted Melissa was angry—"she did push me." Alex further explained Melissa has been at his home when he was caring for his daughters but she does not provide care for them in his absence.

The children's guardian ad litem (GAL) supported granting the CINA petition saying, "[T]here is definitely some issues here that need to be addressed to keep these children safe."

The juvenile court issued its CINA adjudication order in June. Alex appeals.

## II. Analysis

## A. Evidentiary Rulings

In his petition on appeal, Alex argues the juvenile court erred in sustaining objections to six exhibits he offered at the adjudication hearing. But our review of the hearing transcript shows the father's counsel withdrew four of those six exhibits. During Alex's testimony, his counsel offered only Exhibits 5 and 11, which

purported to show that Alex "sees a doctor on a regular basis and has blood work done" during those visits.[2] The court asked counsel: "Are you anticipating offering blood work tests that show that he's negative for drugs? Is that where we're going with this?" Counsel gave this vague response: "I'm offering the reports he provided to me." The court then excluded those exhibits on relevance grounds.

On appeal, Alex argues those exhibits were relevant to show "the medical professionals had zero concerns with [him] abusing drugs or alcohol at the time, nor a history of such." A court should find evidence relevant if "[i]t has any tendency to make a fact more or less probable than it would be without the evidence" and "[t]he fact is of consequence in determining the action." Iowa R. Evid. 5.401. "All facts are admissible in evidence which afford reasonable inferences or throw any light upon the matter contested." *State v. Knox*, 18 N.W.2d 716, 723 (Iowa 1945).

It is true that one fact of consequence at this CINA adjudication was Alex's use of alcohol or controlled substances and how that use affected his safe parenting. He declined the DHS referrals for substance-abuse evaluation and drug testing. Yet, the problem was Alex did not show at the hearing that the excluded exhibits threw any light on whether he had a chemical dependency in the spring of 2019 that prevented him from being a minimally adequate parent. The documents were prepared the previous year and addressed Alex's heart procedure, not his potential substance abuse.

---

[2] Proposed Exhibit 5 was titled "Appointment Details" from Alex's November 29, 2018 visit to the University of Nebraska Medical Center, which included lab results. Proposed Exhibit 11 was a letter to Alex from Aetna Insurance summarizing the covered services from his cardiopulmonary bypass surgery and mitral valve replacement from June 2018.

But even if the medical records hold marginal relevance for the CINA case, Alex must now show their exclusion affected his substantial rights. *See* Iowa R. Evid. 5.103. Alex cannot meet this prejudice test. The juvenile court allowed Alex to relay essentially the same information in his testimony as in the exhibits. *See Morales v. Miller*, No. 09-1717, 2011 WL 222527, at *8 (Iowa Ct. App. Jan. 20, 2011) (finding no prejudice from redaction of deposition testimony where trier of fact heard "substance" of doctor's views). The following exchange is telling:

> FATHER'S COUNSEL: With respect to your testing throughout the past two years or year with respect to your heart, has the doctor ever—doctors at any of your appointments ever talked about how you have tested positive for any type of drug or alcohol? A. No.

Alex clarified: "I have testing records. No doctor in the medical field has communicated with me about drugs in my system for the past two years or concerned with it." On this record, we find no prejudice from the juvenile court's exclusion of the exhibits. *See C.M.*, 526 N.W.2d at 565 (finding even if evidentiary ruling was in error, it was harmless based on de novo review).

**B. Clear and Convincing Evidence**

The juvenile court cited three grounds for adjudication: section 232.2, subsections (6)(b), (6)(c)(2), and (6)(n). The father challenges the evidence supporting all three grounds. We will address each claim in turn. *See In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014) (declining to affirm only on uncontested alternative because grounds for CINA adjudication affect any eventual grounds for termination).

Section 232.2(6)(b) requires the State to prove a parent "has physically abused or neglected the child, or is imminently likely to abuse or neglect the child."

The words "abuse or neglect" in that provision mean "any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian, or custodian or other person legally responsible for the child." Iowa Code § 232.2(42); *J.S.*, 846 N.W.2d at 41.

Here, the State did not offer proof of any past physical injury to B.N. or I.N. So the question under this ground was whether the children faced an imminent likelihood of suffering a nonaccidental physical injury while in Alex's care. Our precedent adopts a liberal interpretation of the phrase "imminently likely" in the CINA context. *See J.S.*, 846 N.W.2d at 43. Because chapter 232 aims to prevent harm to children, the abuse "need not be on the verge of happening" before the juvenile court adjudicates under section 232.2(6)(b). *Id.*

It is enough that I.N. described Alex's serious anger issues and expressed her fear of staying at his home when he is under the influence. Corroborating the child's unease, the mothers witnessed (and Alex conceded) his girlfriend Melissa struck him while the children were present in the home. On top of that incident of domestic violence, Deven previously reported being assaulted by Alex. *See In re L.H.*, 904 N.W.2d 145, 151 (Iowa 2017) (finding father imminently likely to abuse children based on history of domestic violence and testimony in the past he acted in a manner that "scared" them). On our record, we find clear and convincing evidence to show I.N. and B.N. faced imminent risk of nonaccidental physical injury while in Alex's care. *See* Iowa Code § 232.2(6)(b).

We next turn to the CINA finding under section 232.2(6)(c)(2). That provision required the State to present clear and convincing evidence the children were "imminently likely to suffer harmful effects as a result" of Alex's failure "to

exercise a reasonable degree of care in supervising" them. *See* Iowa Code § 232.2(6)(c)(2); *L.H.,* 904 N.W.2d at 152. The State presented evidence L.N., at age six, was left to care for her toddler sister because of their father's intoxication or inattention. The children were also in Alex's care when Alex's girlfriend perpetrated domestic violence against him. Through that evidence, the State proved the children needed DHS supervision and services to address Alex's parenting deficiencies. *See L.H.*, 904 N.W.2d at 153.

Finally, we address whether the court properly adjudicated I.N. and B.N. as CINA under section 232.2(6)(n). Under that subsection, the State must prove a parent's "mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care." Iowa Code § 232.2(6)(n). Here, the evidence showed I.N. and B.N. were CINAs because Alex's drug or alcohol abuse led them to receive inadequate care while in his home.

We recognize Alex vehemently denies neglecting or abusing his children or watching them while under the influence. He argues if McKalya and Deven had truly been concerned for their daughters' safety in March 2019, rather than acting as vigilantes, they would have called police. Alex told the investigator McKayla "was coaching" I.N. to lie about him. He also told the investigator he wanted I.N. to take a lie detector test. But after seeing Alex testify in person, the juvenile court found his arguments "lacking." The court specifically found Alex was "not credible" when testifying to "what transpires in his home while he is caring" for his daughters. We defer to those specific credibility findings. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (noting reviewing court is deferential to juvenile court's

determination of what testimony to believe). We affirm the juvenile court on all three grounds cited in section 232.2(6) for the CINA adjudication.

**AFFIRMED.**