# IN THE COURT OF APPEALS OF IOWA

No. 17-1042
Filed September 27, 2017

**IN THE INTEREST OF T.R., C.R., and K.R.,**
**Minor Children,**

**J.R., Father,**
 Appellant,

**S.H., Mother,**
 Appellant.
_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A father and mother appeal separately from the order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Alexandra M. Nelissen of Taylor Law Office, Des Moines, for appellant father.

Marcy J. Lundberg of Lundberg Law Firm, Indianola, for appellant mother.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

ConGarry Williams of the Juvenile Public Defender's Office, Des Moines, for minor children.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**DANILSON, Chief Judge.**

A mother and a father separately appeal the order terminating their parental rights to three children: K.H.R., born in May 2010; T.H.R., born in October 2008; and C.H.R., born in September 2005. The children—all over the age of four—were removed from the parents' home on December 22, 2015; were adjudicated children in need of assistance (CINA) on February 1, 2016; have been out of the parents' custody for well over a year; and could not be returned to either parent at the time of the termination hearing on June 5, 2017. There is therefore clear and convincing evidence to support the termination of each parent's parental rights pursuant to Iowa Code section 232.116(1)(f) (2017) (allowing termination of parental rights where child four years or older has been adjudicated CINA, has been out of the parents' custody for the last twelve consecutive months, and cannot be returned at present).

While both the mother and father argue there was not clear evidence the children could not be returned at present, which would negate a finding under section 232.116(1)(f), we observe the father conceded as much at the termination hearing.[1] And the mother, on appeal, notes she "requested the court grant her additional time to successfully transition the children back into her care." This is also an acknowledgment the children could not be returned at present.

This family has a long history of involvement with the department of human services and the juvenile court in relation to the parents' inabilities to

---

[1] At the June 5, 2017 hearing, the father's attorney stated, "And it's [the father's] hope that at some point in time he'll be able to have a relationship with [his children], but he recognizes that today is not that day and the children cannot be returned right now."

provide safe and secure care. There are numerous founded child-abuse assessments against these parents. An earlier CINA proceeding was opened in 2011 due to domestic violence and substance-abuse issues. The previous case was closed in 2013, but a new CINA case was opened in December 2015 due to the parents' failure to care for the medical needs of their children. Their then four-year-old child weighed 150 pounds and the other two children were also obese.[2] The children had not received necessary medical care and had extensive medical needs. The parents tested positive for methamphetamine.

When allegations of physical and sexual abuse of the daughters by the father later surfaced, visitation was suspended. The parents never progressed past therapeutic visits. The father ceased participating in services.

On December 9, 2016, the juvenile court entered a permanency order finding, in part:

> [T]he children were subjected to a violent environment [including] the display of weapons prior to their removal and that such was perpetrated by the father . . . , and that this is a changed and new finding from the hearing in August 2016. [The father] is not sufficiently engaged and in therapy to give significant hope at this time that reunification can take place with him. He needs to move out or separate from the mother and engage much more deeply in his own treatment(s) to include mental health and substance abuse.

The court changed the permanency goal to reunification with the mother and granted her an extension, requiring the children's continued attendance in family therapy sessions "that include the mother and [comprise] a genuine

---

[2] K.H.R. was diagnosed with childhood obesity, Chiari Malformation Syndrome, sleep apnea, asthma, pica, and diabetes. The other children in the home were also obese, and T.H.R. was also diabetic. The parents struggled to manage their diets and follow doctor recommendations. When removed from the parents' home all the children began to lose weight.

exploration of times where the children were or felt unsafe, and the mother demonstrates an ability to listen and hear their concerns and assuage their fears that she will [be] safe, sober, and protective," and also requiring the mother to

> continue[] in recovery from substance abuse, a path the court accepts she has been on since end of April 2016, and she follows her therapists advice in therapy and attends to her mental health medication needs (which the court deems more important than a piece of paper from House of Mercy indicating fully successful discharge from SA treatment aftercare requirements).

A review hearing was held on April 12, 2017. We have no transcript of that hearing. This written ruling was filed on April 14:

> Permanency record opened on April 12, 2017, for this family.
> An extension was already given in December 2016 at the one year mark of the child welfare matters. That order remains governing and unchanged.
> A sufficient amount of time has been set in early June to have permanency fully submitted. If State files TPR petition(s) all parties are on notice that it will be heard as well at time set for permanency. We will be at the [eighteen] month mark in these child welfare matters, permanency decisions will be made as these [three] children have been out of home for the entire length of the child welfare case without reunification.

In May 2017 the mother again tested positive for methamphetamine.

At the June 5, 2017 permanency/termination hearing, the parents appeared after the time scheduled to begin. The court allowed the parents to meet and confer with their respective attorneys. The father's attorney then stated on the record, "[M]y client would not contest the termination, but will not be signing a consent." The mother's attorney stated, "My client is resisting the termination, but she is not going to present any independent evidence." The children's guardian ad litem recommended termination of the parents' rights.

The court rejected the father's and mother's later-filed motions to reopen the record, specifically rejecting the parents' claims that their waiver of evidence had been due to coercion. We find no abuse of the juvenile court's discretion. *See In re J.R.H.*, 358 N.W.2d 311, 318 (Iowa 1984) (noting "the court has broad discretion to reopen the evidence").

The presiding judge has been involved with these parents for several years, and in the order terminating parental rights, the court made findings and conclusions fully supported by the record. We need not reiterate those findings here; suffice it to say that upon our de novo review of the record, *see In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014), we conclude there is clear and convincing evidence to support termination of both parents' parental rights to these three children pursuant to section 232.116(1)(f).

The mother contends the evidence is insufficient as it concerns termination pursuant to section 232.116(1)(d).[3] Having already found termination proved by clear and convincing evidence under section 232.116(1)(f), we need not address this assertion.[4] *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

---

[3] Section 232.116(1)(d) allows termination where services were offered or received to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

[4] The only complaint levied to the court by the parents regarding reasonable services sought additional visitation after an allegation of sexual abuse, and a multitude of services were provided by the department of human services.

The children are in need of long-term security and stability, which they have not been able to receive from their parents. *See* Iowa Code § 232.116(2) (requiring that we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child"). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). The children are doing well in their respective foster homes. Termination is in the children's best interests.

The father contends termination is not appropriate because of "a close bond with the father and maternal side of the family." Section 232.116(3) sets out permissive factors the juvenile court can consider that might, under some circumstances, preclude termination. *See A.M.*, 843 N.W.2d at 113. Section 232.116(3)(c) allows the juvenile court not to terminate when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." This is not such a case. Because termination is in the children's best interests, and no section 232.116(3) permissive factor weighs against termination, we affirm.

**AFFIRMED ON BOTH APPEALS.**