**In the Interest of A.H., A Minor Child.**

**State of Iowa, Appellant.**

**No. 93–1045.**

Court of Appeals of Iowa.

May 26, 1994.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Charles K. Phillips, Asst. Atty. Gen., and Brent D. Heeren, County Atty., for appellant.

Joseph G. Bertroche, Jr., of Bertroche Law Offices, Des Moines, for appellee maternal grandmother.

Nancy Burke, Toledo, guardian ad litem for minor child A.H.

Heard by DONIELSON, C.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

The State appeals from a review order in a Child in Need of Assistance case. The order found efforts should continue to reunite Amanda, born August 21, 1986, and now an orphan, with her grandmother. The grandmother and the guardian ad litem argue the juvenile court's finding should be affirmed. We agree and affirm.

■ Just prior to oral arguments, the State filed an application to remand the case to juvenile court to take further evidence because of changed conditions in the grandmother's home. The grandmother and guardian ad litem resisted the motion. The

Iowa court has suggested that while an appellate court can, in limited circumstances, remand to supplement the record there are situations where it should not be done. *See In re M.M.*, 483 N.W.2d 812, 815 (Iowa 1992). The order appealed from was entered June 9, 1993. Under Iowa Code section 232.-102(8)(b), the order is subject to review. The guardian ad litem for the child suggests that there are a number of issues involved in addition to the grandmother's situation and spoke in opposition to a remand from this court. These matters will better be handled in the juvenile court in a review hearing than they would on a remand from this court limiting the issues that could be raised. We find no valid reason to extend the time this case remains in the appellate courts. We overrule the motion for a remand.

■ The facts are accurately set out in the juvenile court's findings. The State does not disagree with the findings, only the ultimate conclusion reached by the juvenile court. We, therefore, accept the specific findings of the juvenile court. We make our own de novo review of the evidence only where the juvenile court has not made specific findings. *See In re J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984).

■ By the time Amanda was four and one-half years old, her biological father had died and her biological mother committed suicide. There is evidence Amanda saw her mother's body shortly after the suicide. After her mother's death, Amanda went to live with her maternal grandmother, Charlotte, and her grandfather but ultimately was placed with a foster family because of evidence her grandfather sexually abused her. Amanda has remained in foster family care since November 1990.

All parties are in agreement and the juvenile court found Amanda is bonded to her grandmother, Charlotte, and her brother, Chris, who lives in the grandmother's home. Amanda, with all that has happened to her, considers her grandmother's place of residence as her home. Charlotte did not feel her husband sexually abused Amanda, rather, she was of the opinion the sexual abuse was done by one of Amanda's mother's boyfriends. A mental health worker character-ized Charlotte's reaction as understandable, particularly when viewed in the context of the situation Amanda experienced in parental care. This factor caused concern about Charlotte seeking to regain custody of Amanda. Charlotte, at the time of the review hearing, had accepted the idea her husband may have committed the abuse. Charlotte, on other issues, was characterized by one department employee as exceptionally cooperative.

Other persons are interested in gaining Amanda's custody. Her foster family is interested in a long-term foster care placement. A paternal aunt and uncle who live in the state of New York seek Amanda's custody. Her paternal grandfather sought custody, then recommended placement with the paternal aunt and uncle.

The experts who had contact with Amanda, while all recognizing her bond with her grandmother, had differing opinions about whether or not she should be reunited with her grandmother or whether other placements should be pursued. The grandmother has suffered emotional problems. Chris apparently engaged in inappropriate sexual behavior with a cousin but his grandmother, after confronting Chris about the incident, immediately made an appointment for Chris with a counselor.

The juvenile court, after carefully reviewing all the evidence, said:

> The court is fully aware that the [aunt and uncle] could provide Amanda a superior home in terms of financial opportunities, stability and protection. The [foster parents] could also provide such a home for Amanda and Amanda has a level of bonding with them. *However, the Court cannot at this point justify visiting another severe separation upon Amanda by ruling that she more than likely would never be reunited with her grandmother and her brother on a full-time basis. The Court does not believe that the risk of further abuse in this case and the potential of Amanda experiencing problems in adolescence are sufficient under the current record to justify visiting certain trauma upon her that would be occasioned by a long-term goal of*

placement with some family other than her own, that is Charlotte and Christopher. (Emphasis supplied).

Amanda has had two guardian ad litems. Both guardian ad litems have had substantial involvement. In *In re J.V.*, 464 N.W.2d 887, 893 (Iowa App.1990), we said:

[O]ur system has provided us with advocates and an impartial decision-maker. The guardian ad litem is not designed to be the decision-maker, and is an advocate for the child, not the parents or the State. It simply is not sufficient for a guardian ad litem to sit back, review the record and the arguments, and arrive at a decision. This function is filled ably by the juvenile courts. Neither is it sufficient for a guardian ad litem to be a handmaiden to one of the adversary parties. Usually there will be a limited number of options for which to advocate, such as whether or not to terminate the parent-child relationship, and the guardian ad litem will often have a position consistent with one of the adverse parties and in opposition to another. This, however, must be solely as an advocate for the interests of the children. Otherwise, the guardian ad litem is merely perfunctory, serving only to fulfill arcane, if not empty, requirements of due process.

The guardian ad litems have followed our suggestions set forth in *J.V.*. The guardian ad litem appeared and argued the case and sought affirmance of the juvenile court's order.

We recognize there are two homes available to Amanda that will provide stability and financial security. We also recognize placement with either of those families will separate Amanda from what she considers "her" family. We recognize the trauma a child suffers when severed from strong family bonds. The juvenile court has carefully considered all alternatives, viewed the witnesses, and has familiarity .with the case. We also give weight to the recommendation of the guardian ad litem.

We look at Amanda's clear indication that her grandmother is her family along with the other evidence. *See State ex rel. Bruner v. Sanders,* 256 Iowa 999, 1006, 129 N.W.2d 602, 606–07 (1964).

The question is what course better serves Amanda's interest. *See In re A.M.S.,* 419 N.W.2d 723, 726 (Iowa 1988); *In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981). The narrow issue before us is should reunification efforts with the grandmother have continued until the next review hearing. We find no reason to disturb the juvenile court's ruling on this issue. We affirm.

**AFFIRMED.**