**IN THE COURT OF APPEALS OF IOWA**

No. 22-1193
Filed September 21, 2022

**IN THE INTEREST OF E.O. and O.O.,**
**Minor Children,**

**L.O., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for O'Brien County, Shawna L.

Ditsworth, District Associate Judge.


        A mother appeals a review order in a child-in-need-of-assistance

proceeding and a ruling on her motion for reasonable efforts.  **AFFIRMED.**


        Kevin J. Huyser of Rensink, Pluim, Vogel & Huyser, Orange City, for

appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick (until withdrawal)

and Erin E. Mayfield, Assistant Attorneys General, for appellee State.

        Tisha Halverson of Klay Law Firm, Paullina, attorney and guardian ad litem

for minor children.

        Deb De Jong, Orange City, attorney for minor child E.O.


        Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

A mother, Lisa, contends that the Iowa Department of Health and Human Services has not made reasonable efforts to return her fourteen-year-old son E.O. and her thirteen-year-old daughter O.O. to her care.[1] She now sees those two children once a week for a supervised four-hour visit.[2] Lisa asked for more frequent and longer visits with less supervision. Following a review hearing, the juvenile court rejected Lisa's reasonable-efforts challenge and left the details of visitation in the department's discretion. The court found that Lisa's interactions with E.O. and O.O. should remain supervised until Lisa addresses the physical abuse and neglect that led to their removal and adjudication as children in need of assistance (CINA).[3] We agree and affirm the court's order.

A CINA review order is subject to appellate review. *In re A.H.*, 519 N.W.2d 425, 426 (Iowa Ct. App. 1994). Our review is de novo. *In re J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984). "The welfare and best interests of the children are paramount." *Id.*

E.O. and O.O. were removed from their home in August 2021 and adjudicated as CINA a month later. That removal and adjudication followed the

---

[1] E.O. and O.O. are the biological children of Lisa and Taylor. Taylor is not a party to this appeal. Lisa and Taylor also have three adopted children: A.O., T.O., and S.O. Those adopted children, all teenagers, were also removed from the home. But they are not the subject of this appeal.

[2] The case manager testified that before Taylor stopped participating in separate interactions with the children, Lisa's visits lasted only two hours because the department's contract with the Family Centered Services provider had "a max of 20 hours per month that they're allowed to do supervised interactions with the family."

[3] The order also required Lisa to have no contact with A.O. and T.O. and to obey a separate order in a criminal case precluding contact with S.O. Lisa is not challenging those aspects of the order.

department's investigation of Lisa's neglect and physical and emotional abuse of the children. The children reported Lisa beating them with a paddle and locking them in the basement without food or water. Once while isolated in the basement, S.O. recalled having an accident because she was too afraid to ask permission to use the bathroom; as punishment, Lisa forced the child to "lick up her own urine" in front of her siblings.

After removal, the children and Lisa all participated in individual mental-health counseling. The children's psychotherapist, Kristal Barglof, testified at the review hearing. Ms. Barglof described E.O. as "slow to open up" and needing to "reprocess trauma" that he experienced from witnessing the abuse of his sisters. According to the therapist, E.O. stopped making progress when he started having visits with his mother. E.O. also complained about his foster home being too structured and his foster parents not allowing him to play video games. By contrast, he was allowed more leeway with electronics during visits with Lisa. When asked about increased or unsupervised visitation, the therapist said her concern "would be just his ability to interact more with his mom versus being on his video games." His sister, O.O., expressed a similar concern to the therapist, saying that she told E.O: "[H]ey, you've got to get off of your video games, we're here to spend time with mom, you're not here to play video games."

As for O.O.'s own therapy, Ms. Barglof was working on her ability to cope with serious anxiety stemming from the abuse. At first, O.O. did not want to participate in visits with Lisa, but agreed to go to protect her brother. O.O. recently revealed that Lisa had pulled her aside at a supervised visit and said, "[D]on't believe anything that people tell you unless you hear it from me," which O.O

interpreted as "her mom's way of trying to manipulate" her and E.O. Because of that manipulation, the therapist concluded that O.O. would not feel safe in unsupervised visits with Lisa. As her bottom line, the therapist did not believe that the children could move toward healing unless Lisa owned up to the abuse. In the therapist's view: "[A]ccountability needs to be taken by mom so that they can start creating a new relationship where there is that safety and that trust."

In her separate therapy sessions, Lisa has made progress in using coping skills "to process challenging events in her life." But she has not "taken any ownership or discussed the abuse allegations" with her therapist, according to the case manager. Until Lisa acknowledges and works through the abuse, the case manager recommended maintaining fully supervised visitations.

In her petition on appeal, Lisa asserts that despite her compliance with all recommended services, the department "has failed to make reasonable efforts to increase the frequency and duration of family interactions, and decrease supervision of these visits between [her] and her children, which would permit return of custody to [her]." She also points out that E.O. "now has his own attorney" and has expressed a preference for increased visitation with his mother.[4]

In assessing Lisa's claim, we start by defining "reasonable efforts." That term forms the foundation of the State's duty to protect the integrity of the family whenever possible. It means "the efforts made to preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's

---

[4] That attorney moved to join the mother's petition on appeal. But the supreme court struck that joinder motion, noting that E.O. had not separately appealed.

home." Iowa Code § 232.102A(1)(a) (2022). "A child's health and safety shall be the paramount concern in making reasonable efforts." *Id.* As Lisa recognizes, "[r]easonable efforts to reunite parent and child are required prior to the termination of parental rights." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

Key to this appeal, reasonable efforts include "visitation designed to facilitate reunification while providing adequate protection for the child." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Indeed, "[v]isitation between a parent and child is an important ingredient to the goal of reunification." *M.B.*, 533 N.W.2d at 345. Experts maintain that the frequency of family time is a "strong predictor of children being united with their parents." *See* Leonard Edwards, *Reasonable Efforts: A Judicial Perspective* (2d ed. 2021) at 49. But "the nature and extent of visitation is always controlled by the best interests of the child." *M.B.*, 533 N.W.2d at 345.

Applying those legal concepts to these facts, we find that the best interests of E.O. and O.O. are served by continued supervision of their interactions with Lisa. The record reveals valid concerns about their safety and well-being should their visits be unsupervised.[5] Like the juvenile court, we find that the department met the reasonable-efforts standard at the time of the hearing. In requiring fully supervised visits, the case manager properly considered Lisa's lack of progress in accepting responsibility for her abuse of the children and their resulting trauma. *In re S.R*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) ("The requirement that a parent

---

[5] Lisa also contends that she provided the department with names of friends and family members who could supervise visitations. But the case manager did not contact them. We believe that given the serious abuse and neglect allegations and evidence of "Lisa not being honest" about the reason for the CINA case, it is reasonable for the department to insist on professional supervision.

acknowledge and recognize abuse is essential for any meaningful change to occur.").

But that is not to say that the department should not entertain the possibility of increasing the frequency and duration of the visits and decreasing the supervision if Lisa makes progress and it is in the children's best interests. To her credit, Lisa has consistently participated in individual counseling and weekly interactions with E.O. and O.O. As its response to the petition on appeal notes: "The State is hopeful these services will motivate and encourage Lisa to take accountability and demonstrate the protective capacity which is necessary to allow reunification in this case." We echo that sentiment.

**AFFIRMED.**