# IN THE COURT OF APPEALS OF IOWA

No. 24-1469
Filed December 18, 2024

**IN THE INTEREST OF Q.C., A.G., and A.G.,**
**Minor Children,**

**J.G., Mother,**
       Appellant.

_____

       Appeal from the Iowa District Court for Wapello County, Richelle Mahaffey,

Judge.


       A mother appeals the district court's removal, adjudicatory, and

dispositional orders.  **AFFIRMED.**


       Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant mother.

       Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

       Sarah Wenke, Ottumwa, guardian ad litem for minor children and attorney

for minor child Q.C.

       Jonathan Willier, Centerville, attorney for minor child A.G.


       Considered by Schumacher, P.J., and Badding and Chicchelly, JJ.

**SCHUMACHER, Presiding Judge.**

A mother appeals following the district court's dispositional order that confirmed her three children's adjudication as children in need of assistance and continued their removal from her custody. She challenges the children's initial removal, subsequent adjudication, and continued removal at disposition. Upon our de novo review, we affirm.

## I.      Background Facts and Proceedings

The Iowa Department of Health and Human Services has an extensive history with the mother of these children. Her oldest child turned eighteen while this appeal was pending; the other two are now sixteen and nine years old.[1] The department was involved with the family in 2009, 2011, and 2021 because of the mother's substance use. And the department became involved in 2022 because the mother was living with a registered sex offender. The sex offender was the mother's stepfather who, according to a child protective assessment, was convicted of two counts of third-degree sexual abuse in 2004 involving female children. The mother maintained that she needed to live with him so that she could care for her mother, who was bedridden. The department gave her information about services available in the community to help provide care for dependent adults, and the mother and children moved out of the home.

But in March 2024, the department received a report that the family was again living with the stepfather. The mother dodged the department's efforts to contact her, until her arrest at the beginning of April for driving while barred,

---

[1] The children's fathers have not appealed.

possession of drug paraphernalia, and possession of methamphetamine, third offense. The police report stated the mother was driving the vehicle when it was stopped for a traffic violation. Her "purse was on the arm rest middle area between the two front seats." Inside the purse, officers found "a plastic baggie with crystal residue" and "a used hypodermic needle" with a clear substance that field tested positive for methamphetamine. And in the arm rest under the purse, officers found "several small zipper baggies, similar to the one found in the purse. One of the baggies contained a usable quantity of a white crystalline substance" that also field tested positive for methamphetamine.

The department removed the youngest child from the mother's custody and placed her with a maternal aunt, where she has since remained. Because the department could not locate the oldest child, and the middle child was believed to be living with his father under a district court custodial decree,[2] the department did not include those children in the removal request. The State petitioned to have the oldest and youngest children adjudicated as in need of the court's assistance in April.

Towards the end of April, the department opened a new assessment for the middle child upon receiving a report that he had been running away from his father's home and "exhibiting numerous behaviors," like skipping school and "threatening to slash the car tires, put holes in the walls, [and] break electronics." The father told the department that if the child was found, he could not return to the father's home "due to his chronic running behaviors and unwillingness to

---

[2] The decree placed the child in the parties' joint legal custody and the father's physical care, with visitation for the mother at the father's discretion.

engage in treatment to address his mental health diagnoses" of attention deficit and oppositional defiant disorders. The State filed a child-in-need-of-assistance petition for the middle child at the beginning of May, while his location was still unknown. The mother maintained that she did not know where he was, though the father told the department that he had heard the mother was hiding the child. The mother arrived at the adjudication hearing in June with the child, who said that he did not want to return to his father's home. The parents agreed to a safety plan placing the middle child in the aunt's home, but he returned to the father's home after about a month. While there, the child assaulted his father. He was later arrested and placed in shelter care. Neither the father nor the aunt would take the child back into their homes, and the department could not find a foster care placement for him.

The district court granted the State's petitions in July, removed the oldest and middle children from the mother's custody, and adjudicated all three children as in need of the court's assistance under Iowa Code section 232.96A(3)(b), (14), and (16)(d) (2024). The middle child was also adjudicated under section 232.96A(6), (7), (11), and (12). The court noted that since the mother's release from jail in April, she "has not been cooperating with" the department:

> She has declined to provide drug screens when requested. She has not signed requested releases. She has not completed a substance abuse evaluation. [The mother] denies any methamphetamine use. Yet [she] has claimed she will check herself into in-patient treatment. This has not yet happened. [The] mother has not participated in any mental health services.

The court concluded it was not safe for the children "to be residing with a parent who is using methamphetamine and who lacks a safe residence." The mother was

directed to address her substance use, find safe and stable housing, and "share what she knows about [the oldest child's] whereabouts" so her safety could be assured.

The mother had not done any of these things by the dispositional hearing in September, although the oldest child had been located and was living with her father. On the department's recommendation, and the oldest child's request, the district court's dispositional order placed the child "in the care of her father only . . . under the supervision of the Department," with her case to "automatically close" on the child's eighteenth birthday. The middle child had "absconded from his placement and has been on the run for approximately two weeks." The attorney for that child urged the court to allow him to live with the mother. The mother requested the same. The court denied their requests and ordered the middle and youngest children to remain in the custody of the department "for placement in relative care, fictive kin, foster care, and/or shelter care."

The mother now appeals the children's initial removal, adjudication as children in need of assistance, and the court's disposition continuing their removal from her custody. *See In re Long*, 313 N.W.2d 473, 475 (Iowa 1981) (holding an order for adjudication is not final for appeal purposes until disposition and a parent "must generally wait until after the dispositional hearing" to appeal).

## II.    Standard of Review

We review child-in-need-of-assistance proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). We give weight to the fact findings of the district court, but we are not bound by them. *Id.* "Our primary concern is the children's best interests." *Id.*

### III. Analysis

### A. Initial Removal

The mother first claims the children's "initial removal was not supported by evidence that there was an emergency that necessitated separating the family." But, once a dispositional order is entered, "[w]e cannot go back in time and restore custody based on alleged errors in the initial removal order." *In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994); *In re K.G.*, No. 21-1384, 2022 WL 244855, at *6 (Iowa Ct. App. Jan. 27, 2022). Our review will thus be confined to the children's continued removal from the mother's custody at disposition, *see A.M.H.*, 516 N.W.2d at 872, which we discuss after addressing the mother's challenge to the statutory grounds for the children's adjudication.

### B. Adjudication

The mother purports to challenge each of the grounds for the children's adjudication under the general issue heading: "Whether the children met the statutory requirements to be found in need of assistance under Iowa Code." She claims "the State failed to prove the grounds for adjudication by clear and convincing evidence" and makes vague, conclusory arguments without citation to the record, the specific grounds being challenged, or legal authority.

We acknowledge the expedited nature of this appeal. *See* Iowa R. App. P. 6.201(1)(b). But our rules require more than "broad, all encompassing" arguments to identify error. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000); *see also* Iowa R. App. P. 6.201(1)(d) ("The petition on appeal must substantially comply with rule 6.1401—Form 5."); 6.1401–Form 5 ("[S]tate what findings of fact or conclusions of law the district court made with which you disagree and why,

generally referencing a particular part of the record, witnesses' testimony, or exhibits that support your position on appeal. . . . *General conclusions, such as 'the trial court's ruling is not supported by law or the facts' are not acceptable.*"). "[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments." *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996).

Because the mother's conclusory statements are not enough to facilitate our review, *see In re K.C.-P.*, No. 23-1730, 2024 WL 260829, at *1 (Iowa Ct. App. Jan. 24, 2024), we consider her challenge to the grounds for the children's adjudication to be waived. *See In re B.M.*, No. 21-0820, 2021 WL 3661402, at *2 (Iowa Ct. App. Aug. 18, 2021) (finding parents' challenge to adjudication waived where neither advanced "any factual or legal arguments that the grounds for adjudication were not established"); *accord In re X.C.*, No. 20-0470, 2020 WL 2065968, at *2 (Iowa Ct. App. Apr. 29, 2020) ("We find the mother's vague arguments, merely supported by general conclusions without references to the record, to be insufficient to facilitate our review and deem them waived.").

**C.    Disposition**

The mother claims the "disposition of continued removal is not the least restrictive disposition" and asks for the children to be returned to her custody.[3]  As the mother's argument suggests, after a dispositional hearing, the district court "shall make the least restrictive disposition appropriate considering all the

---

[3] Because the juvenile court's dispositional order stated that the oldest child's case would automatically close on her eighteenth birthday, which has already occurred, we need not address the mother's request to return that now-adult child to her custody.

circumstances of the case." Iowa Code § 232.99(4). The possible dispositions "are listed in sections 232.100 through 232.102 from least to most restrictive." *See id.* "The least restrictive disposition permits the court to suspend judgment, with the child remaining with the parent," *In re A.J.*, No. 15-1692, 2016 WL 541435, at *6 (Iowa Ct. App. Feb. 10, 2016), while the most restrictive transfers legal custody of the child to the department for placement outside the parent's home. *See* Iowa Code §§ 232.100, .102(1)(a) (listing placement categories in order of priority). Section 232.102(4)(a) directs that "[w]henever possible the court should permit the child to remain at home with the child's parent, guardian, or custodian."

To that end, section 232.102(4)(a)(2) states, "[c]ustody of the child should not be transferred unless the court finds there is clear and convincing evidence" that the "child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available." We agree with the State, summarizing the district court, that "[s]ince adjudication, none of the concerning circumstances that existed at the outset of the initial child abuse assessment have been addressed."

In her social history, the mother reported a long history of methamphetamine use, starting when she was just thirteen years old. She had some periods of sobriety over the next two decades, but they were punctuated by treatment and relapses. The mother stated that she most recently completed substance-use treatment in 2022 and had been sober from methamphetamine since then—even though she was arrested in April 2024 after methamphetamine was found in her car and purse. Although the mother said that she "would be willing to go back to treatment," she had not taken any steps to do so by the

dispositional hearing. The mother declined to participate in drug screening and never completed a substance-use evaluation. She also failed to complete a mental-health evaluation. And she continued to live with her stepfather—a registered sex offender—who she maintained was not a danger to her children.

These circumstances justify the district court's decision to transfer custody of the two remaining children to the department for placement outside the mother's home. The mother's obstinance with the department "prevented the [district] court from monitoring if the necessary progress had been made to return the child" to her custody. *In re O.P.*, No. 23-0464, 2023 WL 3612387, at *2 (Iowa Ct. App. May 24, 2023). Without "insight or recognition of changes that need to be made," we agree with the district court that the children were still at risk of adjudicatory harm if returned to the mother's custody. *In re M.N.*, No. 24-1006, 2024 WL 4039568, at *3 (Iowa Ct. App. Sept. 4, 2024).

The youngest child was doing well in her placement with her maternal aunt, who had gotten the child back into school and on medication to help the child with seizures from a brain injury that she suffered as an infant.[4] But despite the middle child's request to live with his mother, we agree with the district court's disposition. As noted, the mother here has done little to have this child placed in her custody. She has failed to complete a substance-use evaluation. She has not initiated mental-health treatment or substance-use treatment. She does not believe there is a need for court involvement. She has not participated in the requested drug testing. She continues to live with a registered sex-offender. This child's prior

---

[4] The mother had been homeschooling the child and not giving her the necessary seizure medication.

residence with the mother resulted in a founded child abuse assessment for dangerous substances, with the mother listed as the perpetrator after law enforcement discovered methamphetamine in her car. The mother was later charged with harboring a runaway when she allowed this child to reside in her home contrary to court order, not informing HHS, the father, or law enforcement of his whereabouts.

Unfortunately, the child has reported using illegal substances, including psychedelic mushrooms, marijuana, and alcohol. He tested positive for marijuana in July 2024. He reported to his caseworker that he "wants to be able to do whatever he wants whenever he wants." He has eloped from several placements. Given the mother's history, there is understandably a concern for structure and safety in the mother's home, where this child has requested to reside.[5] He had an on-the-run status at the time of the hearing.

The district court determined that the necessity of out-of-home placement of the child outweighed the potential harm of the out-of-home placement, including, but not limited to, physical, emotional, social, and mental trauma resulting from removal. Continued placement in or a return to the home would be contrary to the child's welfare. We agree with the district court's determination and affirm the continued out-of-home placement for the children, as placement in their mother's

---

[5] The mother's brief indicates that the child is under the jurisdiction of the district court in a delinquency proceeding. The child-in-need-of-assistance exhibits contain a copy of a complaint charging the child with interference with official acts—bodily injury. The remainder of any existing delinquency proceeding is not a part of our appellate record.

home is contrary to the welfare of the children and the placement ordered is the least restrictive placement that is appropriate considering the circumstances.

## IV.    Conclusion

We conclude that the mother's challenge to the children's initial removal is moot and that she waived her challenge to the grounds for the children's adjudication.    We affirm the district court's dispositional order confirming the children as in need of assistance and transferring legal custody of the two children to the department for placement outside the parents' homes.

**AFFIRMED.**

Chicchelly, J., concurs; Badding, J., affirming in part and dissenting in part.

**BADDING, Judge** (affirming in part and dissenting in part).

I join in all parts of the majority's thoughtful opinion, except for its decision to affirm the dispositional order that placed the middle child in the custody of the department "for placement in relative care, fictive kin, foster care, and/or shelter care."

In determining the least restrictive disposition appropriate for a child, Iowa Code section 232.102(4)(a) (2024) directs the court to—whenever possible— "permit the child to remain at home with the child's parent, guardian, or custodian." Custody of a child should not be transferred unless the court finds by clear and convincing evidence that the "child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance *and* an adequate placement is available." Iowa Code § 232.102(4)(a) (emphasis added).

I agree that the mother has done little to have the children returned to her custody. But for the middle child, unlike his younger sister, there was no adequate placement available. Throughout this case, the middle child told the department, his attorney, and the court that he wanted to live with his mother. The child has run away from every other placement—his father, the maternal aunt, and shelter care—and the department couldn't find anywhere else for him to live. By the dispositional hearing, the child had been missing for two weeks and the mother was understandably concerned for her son. I am too. While there are certainly risks in the mother's home, the child was at an age where he could protect himself, especially under the department's continuing supervision. And those risks, which can be monitored by the department if the child is returned to his mother's custody,

are not as great as the risks for the child while he is on the run without any supervision at all.

Under these circumstances, I would find that the court should not have transferred custody of the middle child to the department and should have instead allowed the mother to retain his custody under the supervision of the department. *Id.* § 232.101(1); *see also In re J.R.H.*, 358 N.W.2d 311, 320 (Iowa 1984) ("We do not interpret section 232.101 to exclude a parent who has a right of legal custody, but did not share physical custody prior to the commencement of the proceedings."). I would accordingly reverse that part of the dispositional order for the middle child and, unless conditions changed during this appeal, *see J.R.H.*, 358 N.W.2d at 321, remand for further proceedings. *See In re A.G.*, No. 15-0115, 2015 WL 1849520, at *5 (Iowa Ct. App. Apr. 22, 2015) (reversing dispositional order granting custody of child to the department for placement in nonrelative foster care and remanding for entry of a new dispositional order); *accord In re K.P.*, No. 11-1869, 2012 WL 2122227, at *11 (Iowa Ct. App. June 13, 2012) (same).